Ramsay, Respóndent, vs. Biemert and another, Defendants and Appellants: Rothe and another, Interpleaded Defendants and Appellants.

*December 3, 1934—January 8, 1935.*

For the appellants Biemert and Ohio Casualty Insurance Company there was a brief by *Chadek & Cornelisen,* attorneys, and *M. E. Davis* of counsel, all of Green Bay, and oral argument by *Mr. Cornelisen* and *Mr. Davis.*

For the appellants Rothe and Metropolitan Casualty Insurance Company there was a brief by *Coleman & Barry* and *Wm. Leissring, Jr.,* attorneys, and *James E. Coleman* of counsel, all of Milwaukee, and oral argument by *Mr. Coleman.*

For the respondent there was a brief by *North, Bie, Duquaine, Welsh & Trowbridge* of Green Bay, and oral argument by *E. M. Duquaine.*

WICKHEM, J.   On September 25, 1932, plaintiff, who resided in Green Bay, went for a ride with defendant Rothe, in Rothe's car.   Plaintiff sat in the folding front seat next

to Rothe, who was driving. Plaintiff had recently sustained a broken leg, and had this leg resting against the floor board. After driving for some time, Rothe drove the car back to Green Bay to take plaintiff home. He was driving east on Main street, between Webster avenue and Clay street, when his car was struck in the rear by a car driven by defendant Biemert. Main street runs east and west, and is intersected at right angles at Webster avenue and Clay street; Webster avenue being one block west of Clay street. Main street is fifty feet wide, with a single car track in the center. It has no marked lanes of traffic. When Rothe approached Webster avenue he stopped there for a traffic light, and then proceeded towards Clay street. The defendant Biemert was driving behind Rothe and in the same direction. By the time he had arrived at Webster avenue the traffic signal was clear, and he proceeded to cross Webster avenue. He noticed the Rothe car about a block ahead of him. About that time his attention was called to an unusual looking car coming from the other direction, and he turned his head to look at this car. His attention was diverted for about ten seconds, and at that time Rothe's car was fifty feet ahead of him. When he resumed his lookout as the result of a warning by a passenger in his car, he was unable to avoid a collision with the Rothe car. At the intersection with Clay street Rothe desired to turn to his right, slowed down to five or ten miles an hour, and had slightly turned towards the right curb when the Biemert car struck his car in the rear, throwing plaintiff forward and causing a new fracture of his injured leg.

Defendant Rothe contends that the jury's finding of negligence upon his part is not sustained by the evidence. The only respect in which Rothe was found negligent was that he violated sec. 85.17 (1), Stats., which provides as follows:

"The operator of a vehicle intending to turn to the right at an intersection shall approach the point of turning in the traffic lane nearest the right-hand edge or curb of the high-

way and in turning shall keep as closely as practicable to the right-hand edge or curb of the highway."

It is not necessary to determine whether this street had more than one lane of traffic going in the same direction. Assuming that it did, and that the statute applied to one situated as Rothe was, there is clearly no liability. The purpose of the statute was to protect those traveling in the right lane from sudden turns to the right by those traveling a left lane. It was not designed to prevent, nor did its violation cause, the accident here involved. The cars were proceeding in the same direction and substantially in the same line of travel. The evidence is not that Biemert was driving near the curb and that Rothe invaded his path. Rothe had turned his car only slightly to the right, and he was struck in the rear, although, due to the fact that he had begun his turn, the damages were mostly to the right rear portion of his car. The damages to Biemert's car were to the right front portion, indicating that the cars were substantially in line immediately prior to the accident. If there was any causal contribution by Rothe, it was by reason of his decrease in speed, and the jury exonerated him from negligence in this respect. Hence, upon Rothe's appeal the complaint must be dismissed, first, because the jury had exonerated him with respect to stopping, and, second, because there is no causal relation between his violation of the statute, if he did violate it, and his duty to Biemert and the plaintiff.

Upon Biemert's appeal no issue is raised as to negligence; it being conceded that this presented a jury question.

The contention is made that the damages are grossly excessive and that error was committed in the submission of the cause. Plaintiff now has a permanently stiff ankle and a foot that is extended downward until it is nearly parallel with the tibia, and, if the accident under consideration caused this condition, we see no reason to disturb the award. Defendant Biemert contends that it is entirely speculative

whether this accident caused plaintiff's present condition, or what part it had in causing it. At the time of the trial plaintiff was twenty-two years of age. It is in evidence that when plaintiff was about ten years old he was treated for osteomyelitis. An operation was performed and about half of the fibula was removed. The periosteum was saved and a good reproduction of that bone was secured. This resulted in a condition known as drop foot, that is, the tendon Achilles had a tendency to pull the heel up and throw the toes and the foot down due to muscular and nerve impairment caused by the paralysis of the anterior muscle. There is evidence that this was the only functional result of the osteomyelitis. It was necessary to swing the foot in walking, but the record shows that plaintiff could play golf, swim, dance, bowl, and do other things calling for active physical effort. In an automobile accident which occurred on May 5, 1932, plaintiff sustained a fracture of the femur of his left leg, which resulted in a shortening of this bone three-fourths of an inch. The cast which was put on as a result of this accident had just been removed at the time of the accident of September 25th. As a result of the immobilization of the leg and foot, the knee was stiff, and so was the ankle, although there was some motion in the ankle. The foot could be moved sideways, and to some extent up and down, but it could not be brought to a complete right angle to the leg. When plaintiff put his foot on the floor, the heel could not be brought closer than one inch to the floor. There is evidence that the stiffness in the ankle was due to immobilization in the cast; that the healing had not sufficiently progressed to permit improvement of its condition by use. Since the second accident the stiffness in the knee has completely disappeared, and there is medical evidence that the ankle would have improved but for the second accident. In the accident of September 25th, the femur was again fractured. There was no immediate complaint of sprain or injury to the ankle,

but there is evidence that this could have existed without being evident. The leg was immobilized in a cast, which was removed in January, 1933. In February an abscess developed in the region of the ankle; the infection involving all the soft tissues in that part of the leg. It was the medical opinion that this infection came from latent osteomyelitic germs which were lighted up by the accident and became active. There is medical opinion to the effect that as a result of this infection the ankle became perfectly stiff and permanently so, with the foot in an extended position; the axis of the foot being almost parallel with the tibia.

The medical evidence sustains the view that the stiffness of the ankle and the present permanent impairment of plaintiff's foot is the result of the accident here involved. While the experts testify that the accident of May 5th might have been the exciting cause, they testify that the probabilities are that the accident in suit here was responsible. In *Hallum v. Omro*, 122 Wis. 337, 99 N. W. 1051, it was held that "experts may properly testify to the mere probabilities of the case." In *Vilter Mfg. Co. v. Industrial Comm.* 192 Wis. 362, 212 N. W. 641, it was held that a finding may rest upon a preponderance of probabilities. Since the field is one of science where expert testimony is admissible, and since the medical experts testify to the probability that the accident of September 25th was the cause of permanent stiffness in the ankle, it must be held that the jury's award is sustained by the evidence. In the light of these conclusions, the award must be held to be moderate rather than excessive.

There remain to be considered certain errors alleged to have been committed by the court in connection with submitting the cause. The sixth question read as follows:

"What sum will compensate the plaintiff, Kirk Ramsay, for the damages he sustained resulting solely as a result of the collision of the automobiles involved in this accident, occurring September 25th, 1932?"

There were no objections to the question in this form. After the case had been argued to the jury and the court had nearly concluded its instructions, counsel for plaintiff interrupted to make a request concerning instructions on the sixth question. Counsel stated that he had offered no objection to the use of the word "solely" in the sixth question because he had supposed it to be for the purpose of drawing a line of demarcation between the second accident and the previous accident, but that counsel regarded the use of the word "solely" in connection with the court's instructions to be misleading, for the reason that it excluded consideration by the jury of a situation contended by plaintiff to exist; namely, that a pre-existing latent condition was lighted up or aggravated by the accident of September 25th. The court stated that he did not know that he had said anything in the instructions to lead the jury to reach this conclusion, and instructed the jury that "whatever condition of injury resulted caused by this second collision of September 25, 1932, resulting from that injury, the plaintiff is to be compensated for that." The court thereafter stated that he was willing to leave out the word "solely." Counsel for plaintiff then requested leave to file a request in writing, and the jury retired. After some further consultation, the court declined to further instruct the jury, but did strike out the word "solely" from the sixth question. The court argued as a reason for refusing plaintiff's requested instructions that to do so might place undue emphasis on the subject of latent disease germs. On the part of the defendant Biemert it is claimed that striking out the word "solely" would give the jury the impression that the damages need not result solely from the collision of September 25th.

The use of the word "solely" was wholly unnecessary in the question, except for such emphasis as it gave, and the form of the question as finally submitted was entirely cor-

rect. In view of the court's instructions, the jury could hardly have been misled. The instructions were that the jury could assess damages *solely* for the injury caused by the accident of September 25th, and hence striking out the word "solely" from the question could not have affected the jury's considerations. Nor do we think that anything that happened in the presence of the jury could have misled them or operated to the prejudice of defendants. If any one was prejudiced by what happened, it was the plaintiff. In the presence of the jury plaintiff asserted his view that he was entitled to an instruction that he could recover for injuries caused by an infection which was lighted up by the accident of September 25th. Since no such instruction was ultimately given, the natural conclusion of the jury would be that this was an immaterial item.

*By the Court.*—Upon the appeal of defendant Rothe, judgment reversed, and cause remanded with directions to dismiss plaintiff's complaint and the cross-complaint of the defendant Biemert; upon the appeal of the defendant Biemert, judgment affirmed.