## PHILLIPS, Respondent, vs. HARING, Appellant.

*June 3—June 20, 1952.*

For the appellant there were briefs by *Quarles, Spence & Quarles*, attorneys, and *Arthur Wickham* and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Mr. Powell*.

For the respondent the cause was submitted on the brief of *Lowry & Hunter* of Waukesha.

MARTIN, J. On the question of plaintiff's negligence, these facts from his own testimony are significant: When he came over the hill at a distance of eighteen hundred feet from the intersection, he saw defendant's truck half way down, or about nine hundred feet ahead of him. Plaintiff's speed was then forty-five to fifty miles per hour. When the truck was four hundred to five hundred feet from the intersection, the vehicles were about two hundred feet apart. He knew that he was steadily gaining on the truck, as was obvious, since he covered about eleven hundred to twelve

hundred feet while the truck covered five hundred. He first noticed that the truck was slowing down when it was one hundred fifty feet from the intersection and he was one hundred feet behind it, and his speed was then thirty miles per hour. Yet he traveled the last two hundred fifty feet to the point of impact, after being alerted to the fact that the truck was slowing down and at a time when he was traveling only thirty miles per hour, without bringing his car under control—a distance within which he should have been able to stop completely on the dry pavement.

Plaintiff argues that he was trapped by the truck's "sudden" left turn at the intersection; that he could not turn left to avoid the accident because the truck occupied that lane; that he could not continue straight ahead because it also occupied the right lane; that he could not safely turn right for fear of striking a concrete abutment and pole located on the right side of the highway.

The right lane of the black-top highway was ten feet wide plus four feet of gravel shoulder. Exhibit 1, a map of the intersection drawn to a scale of one inch to forty feet, shows that both the culvert and the pole were more than twenty feet from the center line of the highway.

In the first place, plaintiff's own testimony that he noticed the truck slowing down when he was two hundred fifty feet from the intersection and his son's estimate that the speed of the truck was fifteen miles per hour do not support his contention that it made a sudden left turn. There can be no other conclusion than that the slowing down was gradual and apparent to the plaintiff for some distance before the turn was made. Secondly, the fact that the truck occupied the left lane when it began to turn could have no causal relation to the accident. Plaintiff admitted he had no intention of passing the truck until after it had cleared the intersection; yet he ran into it within the intersection. Lastly, it is apparent that, had he maintained adequate control of

his automobile, he could have stopped completely or passed the truck on the right without striking either the culvert or the pole. Upon the basis of plaintiff's own testimony, the evidence compels the conclusion that he would have been unable to avoid the collision even if the truck had not turned but had continued on at its reduced speed.

In *Hephner v. Wolf* (1952), 261 Wis. 191, 52 N. W. (2d) 390, plaintiff sued for injuries sustained when his automobile crashed at night into the rear end of a preceding truck, which had momentarily stopped behind the defendant's automobile, which had stopped because of a flat tire. The evidence showed that plaintiff failed timely to see the lights of either stopped vehicle and although he had ample room on the left for passing, he failed to so manage and control his vehicle as to avoid the collision. It was there held that plaintiff's negligence was greater than that of the defendant in parking his car on the highway.

Although in that case plaintiff had room to pass the stopped cars on the left, the fact that here defendant's truck occupied both lanes of travel when he made his turn is immaterial since plaintiff, traveling in the right lane of the highway, had no intention of passing the truck until after it had cleared the intersection. The same situation existed in *Cole v. Phephles* (1942), 241 Wis. 155, 158, 5 N. W. (2d) 755:

"On behalf of the plaintiffs it is claimed that at the time of the accident the left front wheel of the Phephles car was a little over the center line to the left. While this was denied by the occupants of the Phephles car the jury found in favor of the plaintiffs upon this issue. Assuming that the Phephles car was in the position claimed by the plaintiffs, that could have no causal relation to the accident. Olson had no intention of turning to the left. He testified that when it became apparent that he would have to stop his car, he intended to turn to the right and did turn to the right enough to bring his right wheel upon the shoulder of the highway. Instead of the position of Phephles' car being a

cause of the accident, if it had been still farther to the left, the accident would have been avoided."

The same reasoning is applicable to the facts here. If defendant's truck had been farther to the left there would have been no accident.

It is the duty of the driver of the following car, under circumstances where as here he has ample opportunity to do so, to have his car under such control or to maintain such a distance behind the preceding vehicle as will enable him to stop his car and avoid a collision. Plaintiff's operation of his car so close to the rear of the truck and his failure to have his car under control made it impossible for him to avoid the accident and constituted, as a matter of law, negligence at least as great as any negligence of the defendant.

See also *Quady v. Sickl* (1952), 260 Wis. 348, 51 N. W. (2d) 3, 52 N. W. (2d) 134; *Schultz v. Brogan* (1947), 251 Wis. 390, 29 N. W. (2d) 719; *Hoffmann v. Krause* (1945), 247 Wis. 565, 20 N. W. (2d) 546; *Ramsay v. Biemert* (1935), 216 Wis. 631, 258 N. W. 355.

At the conclusion of the testimony defendant moved for a directed verdict and the court denied the motion. This was error; it should have directed a verdict for the defendant. Hence, the improper communication between the juror and defendant's counsel is immaterial.

*By the Court.*—Order reversed and cause remanded with directions to dismiss the plaintiff's complaint.

FAIRCHILD, J., took no part.