JEFFERS, Appellant, vs. PEORIA-ROCKFORD BUS COMPANY, Respondent.*

*January 8—February 5, 1957.*

* Motion for rehearing denied, with $25 costs, on April 9, 1957.

For the appellant there was a brief by *Moss & Wickhem* of Janesville, and oral argument by *John C. Wickhem* and *Howard H. Moss*.

For the respondent there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham,* and oral argument by *Louis D. Gage, Jr.,* all of Janesville.

CURRIE, J.   The three principal issues on this appeal are:

(1) Was there any statutory duty imposed upon the bus driver which required that he pull over onto the extra paved fourth lane at the right side of the highway when he attempted to make his stop for the railroad spur track?

(2) If there was such duty, was the bus driver's negligence, in failing to perform it, not a proximate cause of the collision as a matter of law?

(3) If there was causal negligence on the part of the bus driver, was the negligence of the plaintiff as a matter of law at least equal to that of the bus driver?

The action was submitted to the jury on the theory that sub. (1) of sec. 85.19, Stats., was the governing statute and the briefs of counsel are silent as to whether sub. (2) of such statute has any application to the facts of this case. The material portions of such two subsections read as follows:

"(1) *Parking on highway.*   No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, . . .

"(2) *Parking on streets.*   (a) No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any street unless parallel to the edge of the street, headed in the direction of traffic, on the right side of the street, and with the right wheels of the vehicle within 12 inches of the curb or edge of the street except as provided in paragraphs (b) and (c) [which two paragraphs have no application to the instant case]."

Sub. (21) (b) of sec. 85.10, Stats., defines a "street" as "every highway except alleys within the corporate limits of any city or village."   Plaintiff's complaint alleged that

the point at which Highway 51 is crossed by the spur track is "inside and to the south of the north city limits of said Beloit," and this allegation stands as a verity because it is not denied in defendant's answer.

Neither party adduced any competent evidence as to whether the place where the collision occurred was within or outside of a business or residence district. After both sides had rested, the trial court at the request of plaintiff's counsel, and over the objection of defendant's attorneys, took judicial notice of the fact that such place was outside of a business or residence district. While the learned trial judge undoubtedly had personal knowledge that the particular area here involved was neither a business nor a residence district, it was nevertheless error for him to have taken judicial knowledge thereof merely because he as a person knew it to be so. Courts should only take judicial notice of facts which lie "within the broad field of subjects of general knowledge." *Kuder v. State* (1920), 172 Wis. 141, 145, 178 N. W. 249. Therefore, if the jury's finding of causal negligence against the bus driver is to be permitted to stand, it necessarily must be because of the provisions of sub. (2), and not sub. (1), of sec. 85.19, Stats.

In instructing the jury with respect to the question which inquired as to whether the bus driver was negligent in respect to the place where he made or was making a stop, the trial court informed the jury of the substance of the material portion of sub. (1) of sec. 85.19, Stats., without referring to the same by number. We consider that such instruction was more favorable to defendant than if the trial court had informed the jury of the substance of sub. (2) of sec. 85.19. This is because, under the instruction given, the jury were only to find the bus driver negligent for not pulling off onto the extra west, or fourth, lane if they determined it was *"practical"* for him to have stopped off the commonly traveled portion of the highway. The *"practical"*

qualification contained in sub. (1) is omitted from sub. (2) of sec. 85.19. We, therefore, do not deem the instruction given was prejudicial to the defendant.

The defendant contends that irrespective of the issue relating to the taking of judicial notice, sub. (1) of sec. 85.19, Stats., has no application to the facts of the instant case. It is urged that such subsection did not require the bus driver to pull over into the extra fourth lane to make his stop for the spur track because such stop was intended to be a momentary one made in the exercise of safety precautions. Such argument would apply with equal force to the provisions of sub. (2) of sec. 85.19 inasmuch as both subsections employ the words, "No person shall park, stop, or leave standing any vehicle, whether attended or unattended." Sub. (30) of sec. 85.10 defines parking as "The stopping or standing of a vehicle, whether occupied or not, upon a highway otherwise than in obedience to traffic regulations or official traffic signs or signals."

It is conceded that there was no traffic regulation, sign, or signal which required the bus to stop for the spur track. Sub. (2) of sec. 85.92, Stats., which requires certain motor vehicles, including passenger buses, to come to a full stop before crossing at grade the main-line tracks of any railroad, has no application to spur tracks.

Defendant's brief cites the case of *Reuhl v. Uszler* (1949), 255 Wis. 516, 39 N. W. (2d) 444, as holding a momentary stop is not a violation of sub. (1) of sec. 85.19, Stats. In that case a Reverend Kuhlow came over a hill and met a funeral procession proceeding in the opposite direction. He pulled partly off the traveled portion of the highway and stopped to pay his respects to the deceased. The portion of his car remaining on the traveled roadway effectively blocked its use by other vehicles proceeding in the same direction as Reverend Kuhlow. Plaintiff came over the hill and stopped his automobile with all four wheels on the pave-

ment immediately to the rear of the Kuhlow car. Then the defendant Uszler, also traveling in the same direction, came over the hill and crashed into plaintiff's car forcing it ahead into the Kuhlow vehicle. This court held that sec. 85.19 (1) was never meant to apply to persons in the position of the plaintiff Reuhl, but Reverend Kuhlow was held to be negligent even though his stop could well be held to be momentary in character.

There is a sound reason why the plaintiff Reuhl was held not to have violated sec. 85.19 (1), Stats. If the highway is blocked so that no one can travel ahead, it is permissible for all vehicles to come to a stop along the traffic lane without pulling off the traveled roadway, because any traffic from the rear could not use the vacated traffic lane because of the obstruction ahead. It is only in situations where the traffic lane ahead is open to vehicles proceeding in the same direction that subs. (1) and (2) of sec. 85.19 would require a vehicle intending to make a stop not required by any traffic regulation, signal, or sign, to pull out of the traffic lane to the right before stopping.

In the recent case of *Vidakovic v. Campbell,* ante, p. 168, 79 N. W. (2d) 806, the defendant Campbell made a momentary stop on the traveled portion of the highway as a safety precaution before turning into a private driveway. This court there held that a jury issue was presented as to whether sec. 85.19 (1), Stats., had been violated. We consider that such case is in point on the question now before us.

It is commendable that defendant Bus Company, in the interest of promoting safety, does require its bus drivers to stop for spur as well as main-line railroad tracks. However, this same objective of promoting highway safety dictates that a bus so stopping for a spur track should pull out of the traffic lane to the right so as not to endanger traffic approaching from the rear. We can perceive of no policy consideration which should cause us to read into subs. (1) and (2)

of sec. 85.19, Stats., an exception that the legislature has not provided in order to exempt such a stopping from the express prohibition of these two subsections.

We, therefore, conclude that it was error for the trial court to have changed the jury's answer to the question which inquired if the bus driver was negligent in respect to the place where he made or was making a stop.

This brings us to consideration of defendant's contention that such negligence could not have constituted a proximate cause of the collision. In support of this contention it is pointed out that the bus was eight feet wide so that, if the driver had pulled off to the right as far as he could onto the six-foot fourth lane, approximately two feet of the bus would have projected into the west of the three traffic lanes in which plaintiff was traveling. From this it is argued that it is entirely speculative whether plaintiff's car would not have struck the left rear portion of the bus projecting into such traffic lane. If it would, then the pulling off to the right onto the extra paved lane would not have prevented the accident, and the failure to have done so could not be causal. However, skid marks were made by plaintiff's car 42 feet in length back from the point of impact. When reaction time is taken into consideration, it is apparent that plaintiff observed the attempted stopping of the bus when it was a considerable distance away although, as the jury found, not as soon as he should have. The jury would have been warranted in concluding that, with only the west two feet of the 10-foot traffic lane being occupied by the bus, a driver in plaintiff's position would have attempted to pass the bus to the left, in order to avoid a collision, instead of merely slamming on his brakes. It, therefore, does not necessarily follow that the accident would have occurred just the same if the bus driver had pulled onto the fourth lane.

There appears to be no precise line of demarcation between a jury drawing a legitimate inference from the evidence

and engaging in unwarranted speculation. For example, we allow a jury to infer that a speed of 30 miles per hour in a 25-mile speed zone immediately prior to a collision was causal. It could be argued with much logic that it is indulging in pure speculation to so find because in effect the jury by so doing necessarily determines that the accident would not have occurred at a speed of 25 miles per hour.

Prosser, Law of Torts (2d ed.), p. 281, sec. 50, states that *"where reasonable men could not differ* as to whether the defendant's conduct was, or was not, a substantial factor in producing the result" the determination of the question of causation is for the court; but "in cases *where reasonable men might differ—which will include all but a few of the cases* in which the issue is in dispute at all—*the question is one for the jury."* (Emphasis supplied.)

We are constrained to hold that whether the bus driver's negligence was causal in the instant case presented a jury issue, and that the jury's finding in the affirmative should not have been disturbed by the trial court.

Defendant's counsel strongly urge that it should be determined as a matter of law that plaintiff's negligence was at least equal to that of the bus driver.

On the night of the accident the weather was described as misty with a light snow falling. This may in part have accounted for plaintiff's failure to have seen the flashing on of the amber brake lights of the bus, although it does not excuse the same. In apportioning the negligence, the jury may have considered that the stopping of the bus in the lane of travel instead of pulling off to the right was especially negligent under the weather conditions then prevailing.

The fact that plaintiff was found causally negligent in two respects and the bus driver in only one respect does not establish that plaintiff was more negligent than the bus driver. *Schmidt v. Leary* (1934), 213 Wis. 587, 252 N. W. 151 : *Hansberry v. Dunn* (1939), 230 Wis. 626, 284 N. W.

556; and *Bell v. Duesing* (1957), 275 Wis. 47, 80 N. W. (2d) 821.

We consider that the apportionment of negligence was properly for the jury to determine. This was the conclusion reached by us in *Vidakovic v. Campbell, supra,* where a rear-end collision took place under a fact situation not greatly differing from the one here presented. There was a greater temptation presented in the *Vidakovic Case* to disturb the jury's apportionment of negligence than here because in that case the jury only attributed 18 per cent of the total aggregate negligence to the plaintiff driver whose car collided with the stopped vehicle.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the verdict, and to render judgment thereon in favor of the plaintiff and against the defendant.