CUSHING, Plaintiff and Respondent, v. MEEHAN and another, Defendants and Respondents: VETS TOWN CAB, INC., and another, Interpleaded Defendants and Appellants.

*March 4—April 7, 1959.*

32

For the appellants there was a brief and oral argument by *Crosby H. Summers* of Janesville.

For the respondent Lillian Cushing there was a brief by *Jeffris, Mouat, Oestreich, Wood & Cunningham* and oral argument by *Louis D. Gage, Jr.,* all of Janesville.

For the respondents Lester R. Meehan, Jr., and State Farm Mutual Automobile Insurance Company there was a brief by *Roberts, Boardman, Suhr, Bjork & Curry* of Madison, and oral argument by *Robert L. Curry.*

FAIRCHILD, J.    Appellants assert the following propositions: (1) There is no credible evidence to support the finding that the cab was making a stop; (2) there is none to support the finding that the stopping was in violation of the statute; (3) there is none to support the finding that the place of stopping was a cause of the collision; (4) the negligence of Meehan was an intervening cause. We cannot agree.

(1) *Evidence that the cab was making a stop.* John King died before the trial. Mrs. Cushing and Meehan testified. Without reciting the testimony in detail, it suffices to say that both testified that the cab "stopped;" that on further examination neither was absolutely certain that the cab became stationary at or before the time it was struck from the rear. Mrs. Cushing's recollection was that the cab stopped almost simultaneously with the collision, and Meehan thought it was either stopped or close to it when hit.  In our view the testi-

mony would support a finding that King "stopped or was making a stop."

The question asked was whether King failed to exercise the degree of care required of a taxicab driver in respect to "the place where he stopped or was making a stop." The court's instructions indicated that the jury was to draw no inference from the court's phrasing of the question. The form of the question was the same as used in *Jeffers v. Peoria-Rockford Bus Co.* (1957), 274 Wis. 594, 597, 80 N. W. (2d) 785. In that case there was a dispute as to whether the bus had come to a stop or was slowly moving at the instant of impact, although the driver's intention to stop in that case was directly established.

In any event there is further evidence in this record that King did stop. Mr. Bradford, a police officer, heard the noise of the collision and came to the scene. He conversed with the people involved and made a report. Upon the trial he testified to his observations and certain statements made to him by Meehan. In cross-examining Bradford, appellants' counsel produced a copy of the report, asked Bradford to read it into the record, and offered it in evidence. He stated no limitations on the offer, there was no objection, and it was received. The report stated that the cab "stopped in front of the Corn Exchange Restaurant to pick up a passenger." It also related a statement by Meehan that he had not seen the cab slow up until too late to stop. Later in the trial, counsel claimed that he had offered the report only to impeach the officer and that it was not before the court as evidence of the facts stated. It is not very clear that any of the statements in the report were materially inconsistent with any of the officer's testimony and no preliminary questions had been asked with respect to any portion of the report which counsel may have considered inconsistent. For all that appears in the record counsel may at the moment he offered the report have been as much or more interested in introducing substantive evi-

dence of what Meehan said than in impeachment of the officer. We consider that the report, received without objection, was in the record as evidence of the facts therein stated and was not limited to the function of impeachment.

(2) *"Double parking."* Sec. 85.19 (2) (a), Stats. 1953, provided: "No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any street unless parallel to the edge of the street, . . . and with the right wheels of the vehicle within 12 inches of the curb. . . ." Other portions of sec. 85.19 provided exceptions which are not claimed to be material here. Sec. 85.10 (30), defining "parking," implied the further exception of stopping in obedience to traffic regulations or official traffic signs or signals. A further necessary exception was mentioned in the *Jeffers Case, supra,* page 601: "If the highway is blocked so that no one can travel ahead, it is permissible for all vehicles to come to a stop along the traffic lane without pulling off the traveled roadway."

Appellants claim that even if King had stopped the cab in the lane of travel outside the proper lane for parking there was no proof that he did not do so for the purpose of backing into a space next to the curb and behind the cars already parked. There was definite testimony that three cars were parked at the curb and that after King stopped, the rear door, when opened, opened between the second and third car. There was no testimony whether or not there were cars parked behind the third car. Appellants claim that because King was dead at the time of trial, it must be presumed that he was not negligent and, therefore, that his stop was only an incident of a lawful traffic maneuver. We think, however, that the burden would be upon the appellants to show a non-negligent explanation for a stop which constituted negligence unless explained. See *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 187, 83 N. W. (2d) 759. In any event the officer's report previously referred to is evidence that the

stop was made to pick up a passenger. It does not suggest that King had any intention of backing the cab into a proper parking space before picking up the passenger.

(3) *The illegal stop as a cause of the collision.* Appellants point out that the jury found King not negligent in respect to the manner in which he was bringing his cab to a stop. The jury thus must have found that King gave the required signal. Appellants point out a number of portions of Meehan's testimony and calculations therefrom as to the speed of the two vehicles at various stages before the collision, the distances between them at various stages, and the number of seconds which elapsed between various events to which Meehan testified. Generally it appeared that Meehan thought he was going about 15 miles per hour, first saw the cab when he was 10 or 15 feet behind it, thought the cab was traveling 12 or 13 miles per hour, saw the cab brake signal light go on before Meehan applied his own brakes and slid into the back end of the cab. Appellants argue that the collision would necessarily have occurred even if King had not stopped but simply reduced his speed to one or two miles per hour. Obviously Meehan's testimony as to speed and distance consisted of estimates, and calculations based on them do not attain a higher degree of accuracy than the estimates themselves. It was for the jury to determine whether King's stopping in the lane of travel contributed to causing the collision even though King gave the proper signal of his intention to stop.

(4) *Meehan's negligence as an independent intervening cause.* We find no merit in appellants' contention. *Wittig v. Kepler* (1957), 275 Wis. 415, 419, 82 N. W. (2d) 341; *Ryan v. Cameron* (1955), 270 Wis. 325, 331, 71 N. W. (2d) 408.

*By the Court.*—Judgment affirmed.