HIBNER, Plaintiff and Respondent, v. LINDAUER, Defendant: OMERNIK and others, Defendants and Appellants.

*November 28, 1962—January 8, 1963.*

452

For the appellants there was a brief by *Rieser, Stafford, Rosenbaum & Rieser,* and oral argument by *Willard S. Stafford* and *John A. Hansen,* all of Madison.

For the respondent there was a brief by *Immell, Herro, Buehner & De Witt* of Madison, and oral argument by *Jack R. De Witt.*

GORDON, J.   The jury found Mr. Omernik and Mr. Helgesen each five percent causally negligent.  Upon their appeal, such findings must be examined from the standpoint most favorable to the plaintiff.  *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 248, 101 N. W. (2d) 83; *Heckel v. Standard Gateway Theater* (1938), 229 Wis. 80, 82, 281 N. W. 640.  If there is credible evidence to support the jury's answers, such answers must stand.  *Wintersberger v. Pioneer Iron & Metal Co.* (1959), 6 Wis. (2d) 69, 73, 94 N. W. (2d) 136.  In *Olson v. Milwaukee Automobile Ins. Co.* (1954), 266 Wis. 106, 109, 62 N. W. (2d) 549, this court said:

"It is the well-recognized rule that when a jury's findings are attacked, particularly when they have had the trial court's approval, our inquiry is limited to the issue whether there is any credible evidence that, under any reasonable view, supports such findings."

Mr. Udell, a disinterested witness, testified that the Omernik and Helgesen cars were following at a distance of three quarters of a car length to a car length and a half just before the accident. If Mr. Udell's testimony is credible, his testimony alone would support the jury's conclusions as to traveling too close at 25 miles per hour. An effort was made to impeach Mr. Udell's testimony by offering a statement given by him previous to the trial in which he had stated that he could not say how close the cars were at the time of the accident because he "couldn't see." It is noted that in the earlier statement he was discussing the distances at the precise moment of impact, whereas in his later testimony he was depicting the distances shortly before the collision.

In our opinion, such conflict as may exist in Mr. Udell's testimony presented an issue for the jury and may have influenced the weight which would be given to his testimony. *Musha v. United States Fidelity & Guaranty Co.* (1960), 10 Wis. (2d) 176, 181, 102 N. W. (2d) 243. A lack of complete consistency in Mr. Udell's remarks would not necessarily obliterate their probative worth. His testimony, if believed, contained by itself a minimum of evidence to sustain the verdict.

The quality of Mr. Udell's observation has also been challenged because he made it through his rearview mirror at a time when conditions of darkness prevailed. In our opinion, this was another factual consideration which may have influenced the weight to be given his testimony by the trier of fact. In *La Vallie v. General Ins. Co.* (1962), 17 Wis. (2d) 522, 117 N. W. (2d) 703, a driver struck a bump in the road and then made an observation through his rearview mirror as to the location of an approaching car. At

page 527 of the *La Vallie Case* we said that while the "observation to the rear was only a glance, the jury was entitled to accept his testimony in this regard as a verity." We recognize the weakness of this testimony, but we are not inclined to declare it wholly incredible.

The jury apparently chose to believe the testimony of Mr. Udell concerning the closeness of the appellants' vehicles. We are unable to reject such testimony as a matter of law.

The appellants also contend that the skid marks of the Helgesen car demonstrate that Helgesen was traveling more than two car lengths to the rear of the Omernik car. Exhibit 17 shows skid marks to the rear of the Helgesen car, but there is no testimony as to the length of such skid marks. The appearance of the skid marks on the photograph is not so clear that this court, without the benefit of supporting testimony, can determine therefrom the distance that the Helgesen car was traveling behind the Omernik car. For example, there is a break in the continuity of the skid mark leading to the left wheel; also, the skid mark which leads in the direction of the right wheel stops far short of the right wheel.

The appellants also urge that the Lindauer vehicle, an Oldsmobile, was over twice as heavy as the Hibner vehicle, a Hillman, and that therefore the Hibner vehicle was projected backward from nine to 20 feet. In this argument the appellants assume that the collision between the plaintiff's vehicle and Mr. Lindauer's vehicle was substantially head on. We consider that the jury could reasonably have concluded from the evidence that the plaintiff's vehicle was struck at an angle and therefore had only limited backward projection.

The appellants further contend that one who travels to the rear of another vehicle should be free to assume that the car ahead will not stop instantaneously. We are not able to adopt the appellants' contention that a driver may always safely assume that the car ahead of him will slow down and travel a short distance before coming to a complete stop; each case will depend on its own circumstances.

The appellants maintain that they should be relieved from liability because of public-policy considerations—that to affirm liability here would place an unreasonable burden upon users of the highway. The legislature in attempting to designate the distance between vehicles could give no more precise a definition than that the distance must be "reasonable and prudent, having due regard for the speed of such vehicle and the traffic . . ." What is "too close" will ordinarily be a question of fact to be determined upon the trial. In applying the statutory standard, the trier of fact must weigh a great many considerations, including speed, amount of traffic, road conditions, and opportunities for clear vision. This court has said that there is a duty of a driver of a following vehicle "to maintain such a distance behind the preceding vehicle as will enable him to stop his car and avoid a collision." *Phillips v. Haring* (1952), 262 Wis. 174, 180, 54 N. W. (2d) 200.

The jury would have been warranted in reaching its conclusion of negligence on the part of Omernik and Helgesen even if it rejected as incredible the testimony of Mr. Udell. The jury may have considered that there was proof that the appellants Omernik and Helgesen were tailgating because of the simultaneous occurrence of the crashes. One witness testified that he heard only a single crash.

The same finding of a small degree of negligence could properly have been reached by the jury even if it were convinced that there was a spread of two car lengths between the cars. Under all the circumstances of the prevailing traffic and darkness, it would not be error as a matter of law for the jury to have concluded that such distance was imprudent within the terms of the statute.

The practice of following too close is one of the leading causes of accidents. On the national level, it has been statistically determined that following too close was a contributing factor in 12.9 percent of all automobile accidents,

exceeded only by speed and failure to yield the right-of-way. See report of National Safety Council, "Accident Facts," 1962 edition, page 50. The same conclusion has been reached with reference to accidents within the state of Wisconsin, as reflected in "1960 Wisconsin Accident Facts," page 24, compiled by the Wisconsin motor vehicle department.

We hold that there is credible evidence to sustain the verdict; we are unable to rule as a matter of law that Mr. Omernik and Mr. Helgesen were following at reasonable distances. There are no considerations of public policy which prompt us to adopt a rule more favorable to these appellants. Indeed, we believe that the public weal is properly served by a rule which requires alertness to the space interval between automobiles traveling in the same direction.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.