MILWAUKEE & SUBURBAN TRANSPORT CORPORATION, Appellant, v. ROYAL TRANSIT COMPANY, INC., Respondent.

*January 7—February 1, 1966.*

For the appellant there was a brief by *Kivett & Kasdorf*, attorneys, and *Nonald J. Lewis* of counsel, all of Milwaukee, and oral argument by *Mr. Lewis*.

For the respondent there was a brief by *Wickham, Borgelt, Skogstad & Powell*, attorneys, and *Kurt H. Frauen* and *F. Dean Lawson* of counsel, all of Milwaukee, and oral argument by *Mr. Frauen*.

HEFFERNAN, J.

*Was there negligence properly
ascribable to the bus driver?*

There is some conflict in the evidence in regard to where the bus stopped in relation to the edge of the road. At the point where the accident occurred, the northbound lane of divided Highway 41 was 22 feet 4 inches in width. The shoulder at the bus stop was 10 feet wide. The bus was 8½ feet wide. It is undisputed that the bus could have been driven off the paved portion of the highway. The police officer witness placed the left rear wheel of the bus 11 feet 9 inches from the right edge of the road, which would mean that the bus was completely on the pavement at the time of impact. The driver testified that his left wheels were on the pavement and the right wheels were on the shoulder. One passenger said the bus was completely off the pavement, one said it was partly on the pavement and partly off. Two truck drivers testified that no part of the bus was on the shoulder. It is clear that, though the evidence is to some degree disputed, there was ample credible evidence for the jury to conclude that the bus was brought to a stop at least in part upon the traveled portion of the road. The question presented is, therefore, whether stopping in this position upon the road constituted negligence.

The disputed negligence of the bus mainly concerns that which might be attributable to its position on the

highway when it came to a stop. In essence the trial judge, relying on the statutes,[1] instructed that, if this were a rural highway, the statute prohibited any person from stopping a vehicle upon the roadway if it were practical to stop off the roadway, and that, if this street were in a business or residential district, the vehicle must be parked with the right wheels within 12 inches of the curb or edge of the traveled roadway. The trial judge correctly stated that sec. 346.51, Stats. 1959, is a safety statute and its violation constitutes negligence. The appellant's contention, however, is that there was not sufficient competent evidence before the jury to resolve initially the crucial factual determination of whether the area was outside of a "business or residence district."

We conclude that the facts before the jury were sufficient to take its finding out of the realm of speculation and to support the obvious conclusion that the stopping occurred in a rural area. The bus driver testified that there were about four houses between the point of the accident and Layton avenue, a distance of three blocks. Various witnesses referred to the area as "open country," "open country type highway," and "rural highway coming into city." Photographs evidence the comparative

[1] Sec. 346.51, Stats. 1959, provides in part:

"STOPPING, STANDING OR PARKING OUTSIDE OF BUSINESS OR RESIDENCE DISTRICTS. (1) No person shall park, stop or leave standing any vehicle, whether attended or unattended, upon the roadway of any highway outside a business or residence district when it is practical to park, stop or leave such vehicle standing off the roadway, . . ."

Sec. 340.01 (6), Stats. 1959, provides:

" 'Business district' means the territory contiguous to a highway when 50 per cent or more of the frontage thereon for a distance of 300 feet or more is occupied by buildings in use for business."

Sec. 340.01 (50), Stats. 1959, provides:

" 'Residence district' means the territory contiguous to a highway not comprising a business district where the frontage on such highway for a distance of 300 feet or more is mainly occupied by dwellings or by dwellings and buildings in use for business."

rural nature of the surrounding countryside. There was evidence in the record that the road in question was U. S. Highway 41, that it was a four-lane highway with shoulders approximately 10 feet wide. We conclude that the jury could, without resorting to speculation, and on the evidence before it, determine the nature of the district as required by sec. 346.51 (1), Stats. 1959.

Nor can we agree with appellant's contention that the area, admittedly in the city of Milwaukee, could not be outside a business or residential district. The form of organization of the governmental unit in which the roadway is located is not material under the terms of this statute. It is clear that, bearing in mind the definitions of secs. 340.01 (6) and 340.01(50), Stats. 1959, there may be nonbusiness or nonresidential districts within a city. We have previously held that the statutory duty to pull off of the traveled portion of a highway applied though the roadway was within the limits of a city.[2]

We therefore conclude that on the basis of the facts before it, the jury might properly have found that the conduct of the bus driver in stopping upon the roadway was negligent.

*Was the negligence of the bus driver in stopping his bus upon the roadway a cause of the collision?*

The appellant, bus company, argues that, though there be a finding of negligence upon its driver, such negligence was not causal.

The evidence shows that the driver of the truck had unobstructed vision ahead of him. He first saw the bus at a distance of 300 to 400 yards. He later observed it at a distance of 200 feet and, at that time, he decided to pass the bus. He checked his rearview mirror for

---

[2] *Jeffers v. Peoria-Rockford Bus Co.* (1957), 274 Wis. 594, 80 N. W. (2d) 785.

overtaking and following traffic. When he looked up, he saw the bus at a distance of 16 to 20 feet directly ahead of him. He swung to the left but struck the left rear of the bus with the right side of his tractor and the right front corner of the trailer.

The appellant supports its contention that the negligence of the bus driver is not causal by the decision of this court in *Swinkels v. Wisconsin Michigan Power Co.* (1936), 221 Wis. 280, 267 N. W. 1. In that case the plaintiff attempted to pass a bus that was travelling ahead of him and approximately a foot and one-half over the center line. When attempting to pass, the plaintiff lost control and crashed into a ditch. Our court said:

"The plaintiff knew that the bus was a foot and a half over the black line when he overtook it and when he attempted to pass it. Whatever negligence may be predicated upon the fact that the bus was being operated to the left of the black line was static, a condition rather than a cause. [Citing cases.] The position of the bus on the highway could cause no injury to the plaintiff in the absence of his entering into the dangerous zone alongside of it. It is our opinion that the position of the bus on the highway did not cause the plaintiff's injuries." [3]

The appellant also cites *Collar v. Meyer* (1947), 251 Wis. 292, 29 N. W. (2d) 31, in which, relying on *Swinkels,* this court held that, though an automobile was negligently parked upon the highway in violation of a safety statute, "it did not cause this accident." [4]

The rationale of *Swinkels* was promptly criticized by legal scholars. In discussing *Swinkels,* Professor Richard V. Campbell stated:

". . . the jury found causal connection in fact between the defendant's negligent act or acts and the injury to the plaintiff. Is it fair to say that no reasonable men

---

[3] *Swinkels v. Wisconsin Michigan Power Co., supra,* page 286.
[4] *Collar v. Meyer, supra,* page 294.

could have reached these conclusions? It is difficult to justify the decisions on the basis of the court's control over the fact finding functions of the jury." [5]

Prosser points out the infirmities of the position taken in *Swinkels*.

"Many courts have sought to distinguish between the active 'cause' of the harm and the existing 'conditions' upon which that cause operated. If the defendant has created only a passive, static condition which made the damage possible, he is said not to be liable. But so far as the fact of causation is concerned, in the sense of necessary antecedents which have played an important part in producing the result, it is quite impossible to distinguish between active forces and passive situations, particularly since, as is invariably the case, the latter are the result of other active forces which have gone before . . . . Even the lapse of a considerable time during which the 'condition' remains static will not necessarily affect liability; one who digs a trench in the highway may still be liable to another who falls into it a month afterward. 'Cause' and 'condition' still find occasional mention in the decisions; but the distinction is now almost entirely discredited." [6]

The position this court has consistently taken on the question of causation is expressed in *Lee v. National League Baseball Club:* [7]

"This court is committed to the 'substantial factor' test of determining proximate cause." [8]

---

[5] Campbell, Negligence, 1936–1937 Wisconsin Law Review, 56, 63. See also Campbell, Duty, Fault, and Legal Cause, 1938 Wisconsin Law Review, 402, 422; Campbell, Work of the Supreme Court, Torts, 1941 Wisconsin Law Review, 5, 113; Campbell, Recent Developments of the Law of Negligence in Wisconsin, 1955 Wisconsin Law Review, 5, 34. Professor Campbell in the latter article referred to *Swinkels* as "highly disturbing."

[6] Prosser, Law of Torts (hornbook series, 3d ed.), p. 286, sec. 49.

[7] (1958), 4 Wis. (2d) 168, 89 N. W. (2d) 811.

[8] Id. page 175.

In *Pfeifer v. Standard Gateway Theater, Inc.,*[9] we urged jury instructions using the substantial-factor test in determining legal cause. We there said:

" 'Substantial factor' is probably as simple and accurate a term in defining proximate or legal cause as has thus far been suggested. An instruction on proximate cause would be proper which informs the jury that by proximate cause, legal cause, or cause (whichever of such three terms as may have been used in framing the causation question in the special verdict) is meant such efficient cause of the accident as to lead the jurors, as reasonable men and women, to conclude that the negligence of A (A having been found negligent by the jury's answers to prior question in the verdict) was a *substantial factor* in causing the injury." [10]

Although recent cases have uniformly followed the "substantial factor" rule, we have frequently distinguished fact situations to avoid the application of the "static condition" concept of *Swinkels*.[11]

Because the *Swinkels* approach fails to consider the problem of causation on the "substantial factor" basis as approved and followed by this court, we do not consider it valid authority for the determination of legal cause, and to that extent expressly overrule it.

The instant case was properly submitted to the jury on an instruction directing the jury that "it must appear that the negligence under consideration was a substantial factor in producing the collision."

In *Jeffers v. Peoria-Rockford Bus Co.*[12] we relied upon the following quotation from Prosser in deciding whether the question of cause was for the jury:

"Prosser, Law of Torts (2d ed.) p. 281, sec. 50, states that *'where reasonable men could not differ* as to whether

[9] (1952), 262 Wis. 229, 236, 55 N. W. (2d) 29.
[10] Id. page 236.
[11] *Wintersberger v. Pioneer Iron & Metal Co.* (1959), 6 Wis. (2d) 69, 74, 75, 94 N. W. (2d) 136.
[12] (1957), 274 Wis. 594, 603, 80 N. W. (2d) 785.

the defendant's conduct was, or was not, a substantial factor in producing the result' the determination of the question of causation is for the court, but 'in cases *where reasonable men might differ—which will include all but a few of the cases* in which the issue is in dispute at all—*the question is one for the jury.'* (Emphasis supplied.)"

It is obvious that reasonable men might differ on the question of whether the bus driver's negligence was the cause of the collision. As such, the decision was for the jury and its finding is sustained by credible evidence to support it.

### *Was it error for trial judge to refuse instruction to jury on following too closely?*

The trial judge instructed the jury in regard to negligence as to "lookout," but refused a requested instruction on following too closely.[13] The trial judge in his decision stated:

". . . this truck driver had placed himself in the position of danger in which he could not avoid the accident because of his failure to maintain a consistent proper lookout, in that his attention was deviated to the rear rather than to the forward operation of his automobile. It was his intention to pass. Taking all these factors into consideration, I was of the opinion that the primary problem was not that of following too closely but, rather, of lookout."

We agree with the trial judge that to instruct on following too closely would be improper.

The truck driver testified that he was following the bus at a substantial distance (200 feet) when he decided

---

[13] Sec. 346.14, Stats. 1959, provides in part:

"DISTANCE BETWEEN VEHICLES. (1) The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

to pass and turned his attention to possible traffic to the rear. When he looked again, the collision was imminent and inevitable. True, the outcome was a violent meeting that can only be described as too close for comfort or safety, but clearly the factor resulting in the impact was failure to keep a proper and reasonably constant lookout. Although we have previously said that there is a duty of a driver of a following vehicle "to maintain such a distance behind the preceding vehicle as will enable him to stop his car and avoid a collision," [14] there is no evidence in this case that would reasonably lead one to conclude that the truck driver could not have stopped in time or avoided the collision had he not been guilty of negligent lookout.

It is perfectly clear that the legislature did not intend the provisions of sec. 346.14, Stats. 1959, to apply in all rear-end collisions. The statute is directed against the dangerous and pernicious practice of "tailgating."

We hold that the trial judge did not err in refusing to give the requested instruction.

### Was the comparison of negligence by the jury so disproportionate as to warrant a new trial?

The jury apportioned 35 percent of the negligence to the bus driver and 65 percent to the driver of the truck. On plaintiff's motions after verdict, the trial judge was asked for an order reducing the jury's finding of negligence on the plaintiff "to such amount as a reasonably unbiased and properly instructed jury must return upon all of the evidence." Alternatively, plaintiff asked for a new trial. The trial judge refused to grant either.

This court on the basis of the entire record cannot conclude that the apportionment of negligence was not

---

[14] *Phillips v. Haring* (1952), 262 Wis. 174, 180, 54 N. W. (2d) 200; *Hibner v. Lindauer* (1963), 18 Wis. (2d) 451, 456, 118 N. W. (2d) 873.

within the limits of reason. The comparison of negligence is ordinarily within the province of the jury.

The following is determinative of this court's position:

"The trial court, which had the discretion to grant a new trial, considered the verdict fair, and there is nothing in the record to indicate that the percentages of negligence fixed by the jury are so grossly disproportionate as to justify this court in substituting its judgment for that of the jury and the trial court." [15]

*By the Court.*—Judgment affirmed.

[15] *Jankovich v. Arens* (1952), 262 Wis. 210, 215, 54 N. W. (2d) 909.