Northland Insurance Company, Respondent, v. Avis
Rent-A-Car and another, Appellants.

*No. 303. Submitted under sec. (Rule) 251.54 February 6, 1974.—*
*Decided March 5, 1974.*
(Also reported in 215 N. W. 2d 439.)

The cause was submitted for the appellants on the brief of *deVries, Vlasak & Schallert* of Milwaukee, and for the respondent on the brief of *Charles Saggio* and *William F. Double,* both of Milwaukee.

HALLOWS, C. J. Avis and Liberty argue the trial court erred in applying sec. 347.29 (5), Stats., which requires two red flags to be used when a truck is left standing in a lane of traffic. Avis and Liberty claim the accident occurred within the city of Oak Creek and

therefore the section was not applicable. They also claim the court erred in not finding Balistreri negligent under sec. 346.14 (1), which prohibits tailgating; and finally that the court was in error in applying the emergency doctrine when there was no issue of management and control involved.

The facts are not substantially in dispute. The accident happened on January 21, 1970, at approximately 3 o'clock in the afternoon on Interstate Highway 94 in Milwaukee county. The pavement was dry and level. At the place of the accident there are three 12-foot concrete lanes northbound plus a shoulder of three feet with an increase in height of about four and one-half inches and then a nine-foot parking lane for disabled vehicles. On this afternoon, John F. Michaelson was operating a 1968 International flatbed truck, which his employer Atlas Machinery Company had leased from Avis. The truck was 18 feet long from bumper to bumper and extended seven feet over the rear tires. Michaelson was proceeding northbound on I–94 in the far right outside lane and had just passed under the College Avenue overpass south of Milwaukee, when his engine went dead. He attempted to get off the traveled portion of the pavement and onto the emergency-stop lane. After a time Michaelson succeeded in mounting the curb and bringing his vehicle to a stop in the emergency lane, some 400 to 500 feet from the point where his motor went dead.

There is some dispute in the evidence concerning whether all four wheels of the truck had been brought over the curb and onto the emergency-stop lane, but all parties conceded that the left-rear corner of the flatbed truck did extend into the pathway of the northbound right outside traffic lane.

Michaelson left the truck and contacted his employer who called Avis. Then, Michaelson and his employer returned to the truck in the latter's car. There is some

dispute where the car was parked. Michaelson claims his employer parked his car 12 feet behind the truck on the emergency lane. Other testimony puts the distance at 100 feet. The emergency flasher of the car was on. There is dispute whether the emergency flashers were on the truck at the time of the accident. There were no flags set up.

After the truck had been parked by the side of the road about forty-five minutes, Balistreri approached the scene, proceeding north in the far right-hand lane of I-94, driving a box-type truck 20-feet long. The traffic flow was normal and he was driving 50 miles per hour at a distance of 55 to 60 feet behind a large semi, closed-body truck, proceeding in the same lane. The semi was 55 feet long, 13 feet high, and eight feet wide, and Balistreri had been following this truck for five to six miles, maintaining a constant speed and trailing distance. All of a sudden, the preceding truck veered from the right-hand lane to the center lane. When this occurred, Balistreri became aware of the Avis truck parked in the emergency lane some 40 feet ahead, with its left-rear end protruding out into the right-hand lane. Prior to this time, Balistreri was completely unaware of the Avis truck because his view ahead was restricted by the semi he was following. Balistreri braked, checked his left rearview mirror, turned his truck to the left, and moved as far as possible to the left side of the right-hand lane without entering the center lane. Balistreri could not drive into the center lane because there was a car trailing in that lane some 20 to 40 feet back and moving up. Balistreri was unsuccessful in avoiding a collision with the Avis truck. Damages were stipulated at $2,350.

In finding that Michaelson was 100 percent causally negligent in the manner in which he parked his truck on the highway, the court relied in part on the failure to

place warning flags required by sec. 347.29 (5), Stats.[1] This statute, however, does not apply. The phrase, "at any place mentioned in this section," is defined in sec. 347.29 (1) as "the traveled portion of any highway or the shoulder adjacent thereto outside the corporate limits of a city or village." The counterclaim of Avis and Liberty alleged that when the accident happened on I–94 the vehicle was parked in the city of Oak Creek. This material allegation was not denied in the reply of Northland. Consequently, for the purpose of this action the court was required to take this material allegation uncontroverted in the pleadings as true. Sec. 263.26, Stats., mandates that "Every material allegation of the complaint, and of a counterclaim not controverted as prescribed, shall, for the purposes of the action, be taken as true." *See Herchelroth v. Mahar* (1967), 36 Wis. 2d 140, 153 N. W. 2d 6. This is a prejudicial error because it was taken into consideration, as we read the record, in determining the apportionment of negligence.

The trial court was also in error in its consideration of the application of sec. 346.14, Stats.[2] The court considered that Balistreri would be negligent if he had rear-ended the preceding truck, but even if he were negligent in following the preceding vehicle too closely, his negligence was not causal in respect to the accident involving

---

[1] "**347.29 Display of warning devices for certain vehicles when standing on highway** . . .

"(5) Whenever any vehicle of a type referred to in this section is left standing at any place mentioned in this section at times other than during hours of darkness, the operator of the vehicle shall display 2 red flags upon the roadway in the lane of traffic occupied by the standing vehicle, one at a distance of approximately 100 feet in advance of the vehicle and one at a distance of approximately 100 feet to the rear of the vehicle."

[2] "**346.14 Distance between vehicles.** (1) The operator of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle and the traffic upon and the condition of the highway."

the truck parked on the emergency lane. We agree with the statement in *Milwaukee & Suburban Transport Corp. v. Royal Transit Co.* (1966), 29 Wis. 2d 620, 625, 628, 139 N. W. 2d 595, that tailgating is a dangerous and pernicious practice, whether it is done on a one-lane highway or a three-lane freeway. The trial court found no causal negligence by narrowly construing sec. 346.14 (1), and relying on *Bourestom v. Bourestom* (1939), 231 Wis. 666, 285 N. W. 426, and *Milwaukee & Suburban Transport Corp. v. Royal Transit Co., supra. Bourestom* was decided in 1939 and much has happened in the construction of highways, automobiles and modes of travel. The trial court observed that tailgating on a super highway was now common and was practiced by drivers to keep from being continually pushed back by passing cars which pulled into the following space between two vehicles. It might also be observed judicially that it is generally on super highways that rear-end collisions frequently involve seven to 10 cars, all of whom had been following too closely in relation to their speed. We do not think that because one person is negligent in his driving that other people on the highway are justified in driving negligently. We agree with Mr. Justice FOWLER in his dissent to the *Bourestom Case* when he said, page 676:

"The purpose of holding a trailing driver to a proper distance is to keep him in position to stop or so control his car as to prevent him from doing injury because of the action of the car ahead, whatever be the cause of that action, and regardless of whether that action results from something being in the road ahead of the preceding car as a result of negligence of a third person or independent of negligence of anybody."

This does not necessarily mean that the majority opinion in *Bourestom* is overruled. The language in that case should be restricted to its facts and in this day and age of speed and traffic a tailgating driver is charged

with the knowledge that there may be a disabled vehicle alongside or partly on the road or other obstructions or dangerous conditions on or of the highway which the driver had foreclosed himself from seeing by his tailgating. If this is not correct, then there would be no reason to build emergency-stop lanes on modern super highways.

We think the trial court too strictly construed sec. 346.14 (1), Stats. This section is a safety statute which generally protects the users of the highway. There is no logical reason why the tailgating statute should protect only the preceding vehicle and its occupants. The more logical view is that a statute prohibiting tailgating imposes a duty owing not only to the car preceding but to all other cars and persons who are causally affected by the negligence of tailgating. This is the view taken in *Binion v. Armentrout* (Mo. Sup. Ct. 1960), 333 S. W. 2d 87 and also in *Garland v. Wilcox* (1960), 220 Ore. 325, 348 Pac. 2d 1091. In *Hibner v. Lindauer* (1963), 18 Wis. 2d 451, 456, 118 N. W. 2d 873, we cautioned that a driver may not always safely assume the car ahead of him "will slow down and travel a short distance before coming to a complete stop" and that what is " 'too close' [a following distance] will ordinarily be a question of fact to be determined upon the trial. In applying the statutory standard [of sec. 346.14] the trier of fact must weigh a great many considerations, including speed, amount of traffic, road conditions, and opportunities for clear vision."

In the present case, Balistreri could not see the disabled truck until he was 40 feet from it and after the semi turned to the left. Balistreri's completely blocked view of the road ahead was caused by tailgating the eight-foot wide, 12-foot high semi-truck some 55 to 60 feet behind. This was a violation of sec. 346.14, Stats., which includes within its benefits harm done to other users of the highway.

Under this view, Balistreri placed himself in a position which precludes the application of the emergency doctrine. The three requirements for the emergency doctrine were set out in *Cook v. Thomas* (1964), 25 Wis. 2d 467, 471, 131 N. W. 2d 299, and approved in *Geis v. Hirth* (1966), 32 Wis. 2d 580, 146 N. W. 2d 459. These three requirements included freedom from negligence contributing to the creation of the emergency, a short-time interval, and a question of the driver's management and control after he becomes aware of the situation. Since Balistreri was negligent in respect to creating the situation, he was not entitled to the emergency-doctrine instruction.

*By the Court.*—Judgment reversed, and a new trial granted on the issue of liability.