LA VALLIE, Respondent, v. GENERAL INSURANCE COMPANY OF AMERICA and another, Appellants.

*October 1—October 30, 1962.*

For the appellants there was a brief by *Arnold, Murray & O'Neill* of Milwaukee, and oral argument by *Suel O. Arnold*.

For the respondent there was a brief by *Quarles, Herriott & Clemons* of Milwaukee, and *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, attorneys, and *William K. McKibbage* of Milwaukee, and *John B. Menn* of Appleton of counsel, and oral argument by *Mr. McKibbage* and by *Mr. Peter S. Nelson* of Appleton.

GORDON, J. This is another in that all-too-frequent line of cases in which precious little is known as to what actually happened. Four of the five people who were in the two cars perished directly. The fifth, the plaintiff, did not see the crash.

The jury chose to believe Mr. La Vallie's version of what took place before the collision. His testimony, coupled with the physical facts, contains at least the minimum credible evidence to sustain the verdict. Mr. La Vallie testified that he saw an automobile about 600 feet to the rear at the moment that he struck a bump in the road and started to skid; he then gradually reduced his speed from 35 miles per hour to 10 miles per hour. He traveled a total of about 250 feet from the time he hit the bump until the crash. This, he said, took between ten and fifteen seconds.

The jury exculpated Mr. La Vallie from negligence, presumably because they accepted his testimony regarding his modest speed and further because they believed that his loss of control was not caused by his own negligence. There was corroboration of his testimony as to both the existence of the bump on the highway and as to the icy road conditions. The jury's finding as to Mr. La Vallie's being free from negligence is supported by credible evidence.

The appellants urge that we must attribute some negligence to Mr. La Vallie for his violation of sec. 346.05 (1),

Stats., requiring one to drive on the right half of the roadway, and also for his violation of sec. 346.34 (1), proscribing a change of direct course upon a roadway unless it can be done safely.

The jury expressly found that Mr. La Vallie was not negligent as to his position on the roadway. The jury was properly instructed on the emergency doctrine. Their answer on this part of the verdict must be sustained, and this disposes of the alleged violation of sec. 346.05 (1), Stats. Also, the emergency doctrine would excuse any alleged violation of sec. 346.34 (1), since the change of direct course occurred at a time when the La Vallie car was out of control through no fault of the driver.

Can the finding of negligence on the part of the deceased Mr. Rudenberg be supported? As previously noted, no survivor or other witness actually saw the collision. Mr. La Vallie testified that he observed an automobile 600 feet to the rear at the time the car he was driving went into its skid. We know that the Rudenberg car and the La Vallie car collided with great force in the northbound lane, with the front part of the Rudenberg car meeting the right side of the La Vallie car.

While Mr. La Vallie's observation to the rear was only a glance, the jury was entitled to accept his testimony in this regard as a verity. Mr. La Vallie did not attempt to attribute any given rate of speed to the car at his rear, but the jury was warranted in considering its earlier location in relation to the time and place of the impact in resolving the issue of speed.

Furthermore, the physical facts tend to support the finding of speed. Photographs of the two vehicles were before the jury; we consider that these pictures could very properly have been cogent proof that the Rudenberg car was going at a speed excessive under the existing road conditions. Photographs reflecting the severity of the impact are reproduced with this opinion.

If the jury believed Mr. La Vallie's statement that he was going only 10 miles per hour at the time of the impact, they could reasonably conclude from the smashed appearance of the vehicles that Mr. Rudenberg was going at a much greater speed.

In *Rodenkirch v. Johnson* (1960), 9 Wis. (2d) 245, 250, 101 N. W. (2d) 83, this court said:

"Negligence as to speed may reasonably be inferred from physical facts which may be sufficient to overcome the presumption of due care afforded a deceased person or one suffering from amnesia. . . . Great speed was inferred from the physical facts of damage to the cars and from the serious injuries to the occupants in *Rubach v. Prahl* (1926), 190 Wis. 421, 209 N. W. 670."

Another case in which this doctrine was applied is *Mackowski v. Milwaukee Automobile Mut. Ins. Co.* (1957), 275 Wis. 545, 551, 82 N. W. (2d) 906, where the following was stated:

"The inference of terrific speed at the point of collision was supported by photographs in the record showing an extraordinary degree of demolition of the two cars, and thus evidencing exceptional force of impact."

The jury also found Mr. Rudenberg negligent as to lookout. We are unable to find evidence to sustain this finding. Since the plaintiff was found to have been free of negligence, this conclusion in no way affects the judgment, since any causal negligence on the part of Mr. Rudenberg would be sufficient to support the judgment and, as previously noted, there is a valid finding as to speed.

We simply have no way of knowing whether Mr. Rudenberg maintained a proper lookout. The respondent urges that Mr. Rudenberg's failure to toot his horn demonstrates that he did not make a proper observation. For all we know

from the evidence, Mr. Rudenberg may have made an excellent observation of the scene and decided there was no point in sounding his horn at a skidding car which was out of control in front of him. Since there was no proof regarding skid marks, Mr. Rudenberg may have seen the events clearly, applied his brakes, and yet found himself unable to stop because of his speed and the condition of the highway. The jury had to speculate when it passed on Mr. Rudenberg's lookout.

The jury awarded $45,000 for the plaintiff's "pain, suffering, and disability, past, present, and future." These damages are claimed to be excessive.

To minimize the claim for conscious pain, the defendants have pointed out that the plaintiff was either unconscious, semiconscious, or confused from the date of the accident, November 14th, until December 15th. While this argument tends to support that particular contention of the appellants, it also serves the additional purpose of impressing us with the critical nature of the injuries sustained by the plaintiff.

Mr. La Vallie suffered nine broken ribs and other injuries to his chest, including a punctured lung. A thoracic surgeon with sixteen years of practice, including eight years of chest specialization, described these injuries as the most severe he had ever seen. The plaintiff also sustained multiple fractures of his pelvis.

The plaintiff still has pain in his chest and right shoulder. His right leg is one-quarter inch shorter than his left because of the hip injury. He walks with a limp. After his hospitalization the plaintiff was on crutches for about six weeks. He had almost two months of hospital care, and his life was in jeopardy twice during that time. His special damages for medical, hospital, and miscellaneous expenses, plus loss of wages, were $8,452.62.

We are persuaded that Mr. La Vallie sustained major afflictions including significant permanent injuries. There is sufficient evidence in the record to sustain the jury's finding of damages in the sum of $45,000, and that figure could properly have been approved by the trial court.

Finally, the appellants contend that error was committed when the trial court sent the jury back to deliberate a second time in violation of sec. 270.23, Stats.

The jury first returned to the courtroom to make inquiry on a technical question regarding the necessity for answering a subsequent question in the light of their response to an earlier question. An hour later they returned with a proposed verdict which listed four dissenting jurors. The court advised them that they did not have a verdict and added that the court "deems it advisable to have you return to your jury room for further deliberations, to see whether a verdict can be arrived at that will not have more than two dissenters to any questions or subdivisions which are being dissented to."

We consider the practice employed by the trial court to have been entirely appropriate. Sec. 270.23, Stats., is designed to prevent coercion of jurors when for a second time they have returned to the courtroom and indicated that they are unable to agree upon a verdict. *Douglass v. State* (1854), 4 Wis. 403 (*387), 409 (*392).

It is clear that the jury's first return into court was merely for purposes of obtaining clarification and did not in any way reflect an inability to reach a verdict. In our opinion, a jury may return into court innumerable times to procure information or clarification without activating the provision of sec. 270.23, Stats., which requires that they "not be sent out again without their own consent."

*By the Court.*—Judgment affirmed.