LECKWEE, Plaintiff-Appellant, v. GIBSON, and another, Defendants-Respondents.

Supreme Court

*No. 76–560. Submitted on briefs May 31, 1979.—*
*Decided June 29, 1979.*
(Also reported in 280 N.W.2d 186.)

For the appellant the cause was submitted on the brief of *Norman C. Anderson, Niles Berman* and *Wheeler, Van Sickle, Anderson, Norman & Harvey, S. C.,* of Madison.

For the respondents the cause was submitted on the brief of *Michael M. Cassidy* and *Frank M. Coyne Law Office* of Madison.

BEILFUSS, C.J.   The plaintiff in his motions after verdict and here on appeal contends (1) that there is no credible evidence to support a finding of causal negligence against him, that the jury's answers should be changed accordingly, and judgment entered in his behalf, or (2) that the 75 percent assessment of negligence against him is disproportionate as a matter of law and that a new trial should be ordered, or (3) that a new trial should be ordered in the interest of justice.   We conclude the comparative negligence answers are disproportionate as a matter of law and reverse the judgment and order a new trial on all issues for reasons to be set forth below.

A description of the physical site of the area surrounding the scene of the accident is somewhat difficult to portray because the accident occurred with both vehicles coming off an intersecting highway with an overhead crossing and curving exit ramps. However the highway area immediately adjacent to the collision site presents a basically right angle intersection with one of the roads being designated an arterial highway.

The accident occurred on June 23, 1972 about 4:30 p.m., at the intersection of Aberg Avenue and an exit ramp of Packers Avenue in the City of Madison. Prior to the accident both vehicles had been traveling on Packers Avenue. The plaintiff had been going in a southerly direction on Packers Avenue and intended to travel in an easterly direction on Aberg Avenue. He came down off the ramp and turned left into Aberg. Aberg Avenue runs generally east and west; it is a four-lane highway with two lanes for each direction. Just after Aberg Avenue passes under the overhead the east and westbound lanes are separated by a raised boulevard-type of median strip. Aberg Avenue is an arterial highway. After turning onto Aberg the plaintiff traveled eastwardly for about 180 feet to a point where the exit ramps for northbound traffic on Packers Avenue intersect Aberg Avenue. The collision occurred in this intersection.

The defendant had been driving in a northerly direction on Packers Avenue and intended to go west on Aberg Avenue. He came down the exit ramp to the point where it intersects Aberg. A stop sign is erected there requiring motorists to stop before entering Aberg. The defendant did stop and then started to cross the intersection intending to turn left into the westbound lanes.

The plaintiff-motorcycle driver testified that just as he was coming out from under the overpass he saw the defendant's car stopped at the stop sign on the ramp exit road. He stated he was traveling in the left lane

about four feet from the dividing line for the two eastbound lanes; that he was in second gear and traveling about 25 miles per hour; that he glanced at his tachometer in order to shift gears and when he looked up the defendant's car was in his lane 10 to 15 feet away. The plaintiff did not attempt to stop nor change his line of travel to avoid the collision. He testified there was about six feet from the north edge of the highway. The plaintiff's motorcycle struck the right front corner of the defendant's vehicle. The motorcycle and the plaintiff were thrown onto the median strip.

The defendant, Gibson, the driver of the car, testified that he had come down the northbound exit ramp intending to turn left on Aberg Avenue to proceed west on Aberg; that he had stopped at the stop sign and then proceeded at a very slow speed—one to two miles per hour—into the intersection; that he had looked to his left but could not see anything coming under the overpass; that his front seat passenger called his name in warning; that he then saw the plaintiff's motorcycle and immediately applied his brakes; that although he did not know the speed of the plaintiff in miles per hour, it was fast; and that the collision occurred just a "split second" later. The defendant received a traffic citation for failure to yield the right-of-way which he did not contest.

Roger A. Carey, the uniformed special investigator of the Madison Police Department who was called to the scene of the accident, also testified at the trial. He stated that the width of the two eastbound lanes of Aberg Avenue was 28 feet; however, just before the frontage road at the intersection where the accident occurred the through highway widened to 38 feet to provide for a left turn lane. Carey testified that he had been able to determine the estimated point of impact from the debris left in the roadway. According to his calculations, the impact occurred 23 feet north of the south curb line of Aberg Avenue and 13 feet east of a prolongation of the

center median. That is to say, the estimated point of impact was almost in the middle of the left hand eastbound traffic lane. Carey further testified that the posted speed limit was 35 miles per hour and that there were no skid marks on the road from the motorcycle. In addition, he was allowed to read his summary of the account of the accident each driver gave to him, the defendant at the scene and the plaintiff in the emergency room of the hospital. These statements were contained in the following extract from his officer's report:

"He [Gibson] advised me that he had been proceeding on the frontage road prior to coming to Aberg, had stopped for the stop sign, looked both ways, didn't see anything coming, started out into the intersection, and was struck by a cycle."

"Driver of vehicle one ['67 Yamaha cycle] stated that he had been proceeding east on Aberg in the left traffic lane at about 15 miles per hour when he observed vehicle two stopped at the arterial stop sign on the Packers Avenue frontage road, southeast. He stated this vehicle pulled out directly into him, and he struck it."

The remainder of the testimony dealt with the injuries the plaintiff sustained in the accident. The plaintiff testified that his physician, Dr. Barash, told him that he had a dislocated fractured hip, a fractured knee and cuts on his ankle. Leckwee stated that he was hospitalized for six weeks. The injuries were very painful, requiring him to receive pain medication every four hours for the first couple of weeks. The pain in his hip and knee continued for several months after leaving the hospital. On three separate occasions in 1976 the hip pain recurred, again requiring medication; however Leckwee admitted he was no longer taking pain medication on a regular basis. Leckwee's hip and leg injuries required him to be in traction while in the hospital and, according to his testimony, to use crutches for about three months after his release. He stated that it had been several months before

he could move his toes and that he still had problems moving his ankle and experienced numbness in his lower right leg. Leckwee first declared that he had been unable to drive until about four months after leaving the hospital on August 2, 1972. However, subsequent testimony indicated that he had been arrested for racing while driving an automobile on August 18, 1972.

Dr. Harvey Barash, the orthopedic surgeon who was the plaintiff's treating physician, testified regarding the plaintiff's injuries, treatment and prognosis for total recovery. Plaintiff's injuries, which Dr. Barash described as very painful injuries, included a closed fracture and dislocation involving the right hip, an open fracture involving the proximal tibia (the main bone in the lower leg), and numerous soft tissue injuries of the lower right leg. The hip and leg fractures did not require surgery. However, the wound on the ankle necessitated a skin graft operation which was performed on July 14, 1972 by another specialist. In this operation skin was taken from the plaintiff's thigh and grafted in an area on his right ankle about one and one-half inches in diameter. Dr. Barash testified that there had been no major problems and the operation came out quite well. Essentially the treatment for the fractures consisted of maintaining non-weight bearing, initially through the use of "soft Buck's traction" and later through the use of crutches.

We will not detail the rest of the medical testimony offered by either the plaintiff or defendants for the reason we will order a new trial on all issues.

The first issue in this appeal concerns the request to change the special verdict answer which found that the plaintiff Leckwee, the arterial driver, was causally negligent. When a jury verdict is attacked the evidence will be viewed in the light most favorable to the verdict and the verdict will be affirmed if supported by any credible evidence. *Nelson v. Travelers Ins. Co.,* 80 Wis.2d 272,

282–83, 259 N.W.2d 48 (1977).[1] This is especially so when the verdict has the trial court's approval. *Olson v. Milwaukee Automobile Ins. Co.*, 266 Wis. 106, 62 N.W. 2d 549, 63 N.W.2d 740 (1954); *Hibner v. Lindauer*, 18 Wis.2d 451, 118 N.W.2d 873 (1963). The factual issues were submitted to the jury on an ultimate fact verdict which inquired whether the party named was negligent without reference to specific acts or failure.

The plaintiff's attack on the sufficiency of the evidence is three-pronged: (1) Leckwee had no duty to reduce his speed at the intersection since he was the party proceeding on the arterial highway; (2) even assuming a duty, there was insufficient evidence in the record to support a finding that Leckwee was negligent with respect to speed; (3) under the emergency doctrine, since Leckwee was suddenly confronted with an emergency, he cannot be found negligent as to management and control.[2]

[1] This test for sufficiency of the evidence also appears in sec. 805.14, Stats.:

"**Motions challenging sufficiency of evidence; motions after verdict.** (1) TEST OF SUFFICIENCY OF EVIDENCE. No motion challenging the sufficiency of the evidence as a matter of law to support a verdict, or an answer in a verdict, shall be granted unless the court is satisfied that, considering all credible evidence and reasonable inferences therefrom in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such party."

[2] The plaintiff did not request the "emergency instruction" nor was one given by the trial court. That instruction which appears in Wis J I—Civil, Part I, 1015 provides as follows:

"NEGLIGENCE IN AN EMERGENCY

"Drivers of motor vehicles who are suddenly confronted by an emergency, not brought about or contributed to by their own negligence, and who are compelled to act instantly to avoid collision or injury, are not guilty of negligence if they make such choice of action or inaction as an ordinary prudent person might make if placed in the same position, even though it should afterwards appear not to have been the best or safest course. You will bear in mind, however, that the rule just stated does not apply to any person whose negligence wholly or in part created the

The applicable statutory rules of the road contain the following provisions:

"346.18 **General rules of right of way.** (1) GENERAL RULES AT INTERSECTIONS. Except as otherwise expressly provided in this section or in s. 346.19 or 346.20, when 2 vehicles approach or enter an intersection at approximately the same time, the operator of the vehicle on the left shall yield the right of way to the vehicle on the right. The operator of any vehicle driving at an unlawful speed forfeits any right of way which he would otherwise have under this subsection.

"...

(3) RULE AT INTERSECTION WITH THROUGH HIGHWAY. The operator of a vehicle shall stop as required by s. 346.-46 before entering a through highway, and shall yield the right of way to other vehicles which have entered or are approaching the intersection upon the through highway."

"346.46 **Vehicles to stop at stop signs.** (1) Every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection except when directed to proceed by a traffic officer or traffic control signal.

" (2) Stops required by sub. (1) shall be made in the following manner:

"...

"(c) If there is neither a clearly marked stop line nor a marked or unmarked crosswalk at the intersection or if the operator cannot efficiently observe traffic on the intersecting roadway from the stop made at the stop line or crosswalk, he shall, before entering the intersection, stop his vehicle at such point as will enable him to efficiently observe the traffic on the intersecting roadway."

The law does give the driver on a through highway a preference, however it is not absolute. It is clear that:

---

emergency. One is not entitled to the benefit of the emergency rule unless he is without fault in the creation of the emergency.

"You will bear in mind that this instruction on the emergency rule is to be applied only in regard to the inquiry of negligence as to management and control."

" ' ". . . while one may have the right-of-way and may presume others will respect it, he may nevertheless be negligent in respect to management and control if his right-of-way is not respected and he does not do what he can do to prevent the accident." ' *Chille v. Howell* (1967), 34 Wis.2d 491, 497, 149 N.W.2d 600." *Tombal v. Farmers Ins. Exchange*, 62 Wis.2d 64, 69, 214 N.W.2d 291 (1974).

"The operator of an automobile having the right of way on an arterial highway must still maintain a proper lookout. Having the right of way does not relieve one of the duty of watching the road for vehicles on the highway or entering thereon." *Puhl v. Milwaukee Automobile Ins. Co.*, 8 Wis.2d 343, 348, 99 N.W.2d 163 (1959).

The plaintiff Leckwee testified that when he first saw the Gibson car it was stopped at the stop sign at the end of the exit ramp. Leckwee at this time, again according to his own testimony, was underneath the overpass located some 180 feet away from the intersection at which Gibson had stopped. He chose that moment to take his eyes off the intersection ahead and look down at his tachometer in order to assist him in changing smoothly from second to third gear. He testified that when he looked up again the car was before him in the eastbound lane at a distance of 10–15 feet. The jury could properly have concluded that if Leckwee had been looking and had been more attentive to the road he would have seen the Gibson car start up from the stop sign and proceed into the intersection. The jury could find from the credible evidence that Leckwee did not keep a proper eye on the position and movement of the Gibson vehicle and was therefore negligent as to lookout.

The record also contains evidence as to the plaintiff's management and control of his vehicle. The plaintiff himself admitted that he neither applied his brakes nor attempted to avoid the Gibson vehicle which, if moving at all, was only moving very slowly. Failure to reduce

speed after a dangerous situation has been observed is properly an element of management and control.[3] Failure to take any evasive action when faced with a hazardous situation can also be an element of management and control. There is credible evidence in the record to support a finding that the plaintiff was negligent with respect to lookout and to the management and control of his vehicle.

The plaintiff argues that he could not properly be found negligent as to management and control, invoking the principles of the emergency doctrine. The emergency doctrine, recently summarized in *Tombal v. Farmers Ins. Exchange, supra,* 62 Wis.2d at 70, states:

" 'The doctrine, as stated in *Papacosta v. Papacosta* (1957), 2 Wis.2d 175, 85 N.W.2d 790, is that a person faced with an emergency which his conduct did not create or help to create is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster if he is compelled to act instantly without time for reflection.' *Seif v. Turowski* (1970), 49 Wis.2d 15, 23, 181 N.W.2d 388.

" '. . .

"Three conditions must be met to invoke the emergency doctrine:

" ' "(1) The party seeking its benefits must be free from the negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3) the element of negligence inquired into must concern management and control." *Edeler v. O'Brien* (1968), 38 Wis.2d 691, 697, 698, 158 N.W.2d 301. . . .' *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis.2d 578, 582, 583, 164 N.W.2d 495."

[3] *Danow v. United States Fidelity & Guar. Co.,* 37 Wis.2d 214, 224, 154 N.W.2d 881 (1967); *Jennings v. Mueller Transportation Co.,* 268 Wis. 622, 68 N.W.2d 565 (1955); and *Thoms v. Gunnelson,* 263 Wis. 424, 57 N.W.2d 678 (1953).

As stated above, there is credible evidence to sustain a finding of negligent lookout and management and control. Under these circumstances he is not entitled to a finding of no negligence as a matter of law because of the emergency. Conceivably he could have been entitled to a jury instruction,[4] but he cannot raise that issue because his failure to request such an instruction constitutes a waiver.

[13]

We conclude there is sufficient credible evidence to sustain the answers as to the plaintiff's causal negligence and therefore we cannot change the answers as a matter of law.

The plaintiff's second objection concerns the apportionment of the causal negligence. In the present case the jury attributed 75 percent of the causal negligence to the plaintiff Leckwee, who was the driver on the through highway, and 25 percent to Gibson.

In *Hollie v. Gilbertson*, 38 Wis.2d 245, 250, 156 N.W.2d 462 (1968), this court emphasized the fact that in the vast majority of cases the comparison of negligence is for the jury:

"Generally, apportionment of negligence is for the jury and will not be upset except where it is manifest as a matter of law that the allocation is unreasonably disproportionate. *Lawver v. Park Falls* (1967), 35 Wis.2d 308, 151 N.W.2d 68; *Cirillo v. Milwaukee* (1967), 34 Wis.2d 705, 150 N.W.2d 460; *Firkus v. Rombalski* (1964), 25 Wis.2d 352, 130 N.W.2d 835; *Grana v. Summerford* (1961), 12 Wis.2d 517, 107 N.W.2d 463. Where, however, it appears that the negligence of the plaintiff is as a matter of law greater than that of the defendant, it is not only within the power of the court but it is the duty of the court to so hold. *Peters v. Chicago, M., St. P. & P. R. R.* (1939), 230 Wis. 299, 283 N.W. 803."

[4] *Geis v. Hurth*, 32 Wis.2d 580, 146 N.W.2d 459 (1966).

The question here is whether under the facts of this case the defendant's negligence equaled or exceeded the plaintiff's as a matter of law. This requires the court to determine, based on the credible evidence viewed in the light most favorable to the verdict, in what respects the jury could properly have found each party negligent.[5]

The defendant Gibson testified that he stopped at the intersection, did not see any oncoming traffic, proceeded slowly into the intersection while at the same time attempting to see around the concrete retaining wall of the overpass and was struck by the plaintiff's motorcycle which he did not see until a "split second" before the impact. Gibson by his own testimony did not see the plaintiff until just before the collision. The duty to look means to look efficiently. Gibson was negligent as to lookout in failing to see the vehicle approaching the intersection which he was attempting to enter and has concealed that fact. Both parties agreed that the Gibson vehicle came to a stop at the stop sign at the end of the exit ramp. A driver approaching a through highway on a nonarterial street must not only physically stop his car for the arterial, he also has the duty not to proceed into the interesction until it is safe to do so.[6] Gibson, by proceeding—albeit slowly—into the intersection, was clearly negligent for failing to yield the right-of-way. On the evidence in the record, Gibson could not properly

---

[5] Although it is not determinative, the number of respects in which a driver is negligent is a factor to be considered in the comparison of negligence. *Bishop v. Johnson*, 36 Wis.2d 64, 70, 152 N.W.2d 887 (1967).

[6] *See Schmidt v. Jansen*, 247 Wis. 648, 20 N.W.2d 542 (1945); *Kraskey v. Johnson*, 266 Wis. 201, 63 N.W.2d 112 (1954); *Magin v. Bemis*, 17 Wis.2d 192, 199, 116 N.W.2d 129 (1962); and *Schlueter v. Grady*, 20 Wis.2d 546, 555, 123 N.W.2d 458 (1963).

have been found negligent as to management and control.[7]

It having already been established that the jury could properly have found the plaintiff Leckwee causally negligent with respect to lookout and management and control, the critical question is whether there is credible evidence to support a finding that Leckwee was also negligent as to speed.

The statutory rule of the road relating to speed restrictions declares in pertinent part:

"346.57 **Speed restrictions.** (1) DEFINITIONS . . . .
" . . .
"(2) REASONABLE AND PRUDENT LIMIT. No person shall drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing. The speed of a vehicle shall be so controlled as may be necessary to avoid colliding with any object, person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and using due care."

The jury received an instruction to this effect. The posted speed limit was 35 miles per hour. Leckwee testified that just prior to the accident he was traveling at a speed of 25 miles per hour. He based his opinion on the fact that he had just started up from a stop sign and was only in second gear. The investigating officer read from a report which quoted Leckwee as having declared that he was only going 15 miles per hour at the time. The defendant, who admitted he only observed the plaintiff a "split second" before the impact, testified that the motorcycle was going "fast." Gibson was not asked to illustrate what he meant by the term. The word is vague

---

[7] The trial court properly instructed the jury that a driver who does not see or become aware of danger in time to take effective steps to avoid an accident is not negligent as to management and control. Such failure relates to the matter of lookout.

and has very little probative value. This principle has been applied to the position of the vehicles, their damage and their location before and after the impact.[8] The investigating officer testified that there were no skid marks on the road from either vehicle. Photographs of the Gibson car showing only minor damage to the right front headlight and bumper are not probative of a finding that the plaintiff's speed was greater than was reasonable and prudent under the conditions. Neither can excessive speed be inferred from the mere fact that the accident happened at all, since it might in fact have been caused by negligent lookout or control. The observations of the witnesses and the physical facts surrounding the accident are of insufficient probative value to support a finding that Leckwee was negligent as to speed.

Clearly the defendant Gibson was negligent as to lookout and failed to yield the right-of-way. These acts of negligence were the dominant causes of the accident. *Cf. Chille v. Howell,* 34 Wis.2d 491, 497, 149 N.W.2d 600 (1967). The jury could have properly found the plaintiff Leckwee negligent both as to lookout and as to management and control. On the facts of this case and in view of the rule that some preference must be accorded users of an arterial highway, it must be concluded that as a matter of law the defendant's negligence was at least equal to the plaintiff's. The answer to the special verdict question concerning the comparison of negligence must be set aside, the judgment reversed and a new trial ordered.

The final argument of the plaintiff is that the damage award of $3,500 for the personal injuries he sustained

---

[8] *See Rodenkirch v. Johnson,* 9 Wis.2d 245, 101 N.W.2d 83 (1960); *Mackowski v. Milwaukee Automobile Mut. Ins. Co.,* 275 Wis. 545, 82 N.W.2d 906 (1957); *Odya v. Quade,* 4 Wis.2d 63, 90 N.W.2d 96 (1958).

is inadequate. While the damage award does appear to be low we do not express an opinion concerning it for the reason the new trial will be on all issues.

We do not reach the issue of a new trial in the interest of justice.

*By the Court.*—Judgment reversed and cause remanded for a new trial.

DAY, J., took no part.