Gustave Jeffrey TOTSKY, a/k/a G. Jeffrey Totsky and Kristine Totsky, Plaintiffs-Respondents,†

v.

RITEWAY BUS SERVICE, INC., Sharon Y. Williams and National Continental Insurance Co., an Ohio Corporation, a part of the Progressive Insurance Group, Defendants-Appellants,

WISCONSIN PHYSICIANS SERVICE INSURANCE CORP., a Wisconsin Corporation and Quad/Med Claims, Quad/Graphics, Inc., Defendants,

MAXICARE HEALTH INSURANCE COMPANY, a California Corporation, Defendant-Respondent,

CITY OF MILWAUKEE and State Farm Mutual Automobile Ins., Respondents.

Court of Appeals

*No. 97–0530. Submitted on briefs April 7, 1998.—Decided July 14, 1998.*

(Also reported in 584 N.W.2d 188.)

† Petition to review granted.

On behalf of the defendants-appellants Riteway Bus Service, Inc., Sharon Y. Williams and National Continental Insurance Co., the cause was submitted on the briefs of *Emile H. Banks, Jr.* and *Vicki L. Arrowood* of *Kasdorf, Lewis & Swietlik, S.C.*, of Milwaukee.

On behalf of the plaintiffs-respondents Gustave Jeffrey Totsky, a/k/a G. Jeffrey Totsky and Kristine Totsky, the cause was submitted on the brief of *Mark J. Rogers* of *Angermeier & Rogers*, of Milwaukee.

Before Fine, Schudson and Curley, JJ.

CURLEY, J. Riteway Bus Service, Inc., Sharon Williams, and National Continental Insurance Company (collectively, "Riteway") appeal from a circuit court judgment entered in favor of the plaintiffs G. Jeffrey Totsky and Kristine Totsky. The Totskys sued Riteway following a collision between a school bus driven by Williams during the course of her employment by Riteway, and a car driven by Jeffrey Totsky. A trial was held, and at the close of evidence, the Totskys moved for a directed verdict in their favor, or in the alternative, for a new trial. The circuit court reserved decision on the directed verdict and allowed the jury to deliberate. The jury returned a verdict in favor of Riteway. The circuit court then granted the Totskys' renewed motion for directed verdict, and entered a judgment in favor of the Totskys. The circuit court also conditionally granted the Totskys' motion for a new trial in the event that the judgment was reversed or vacated on appeal. On appeal, Riteway claims that the

circuit court erred by granting the Totskys' renewed motion for directed verdict, and by conditionally granting the Totskys' motion for a new trial. We agree. Therefore, we reverse the judgment and the conditional order for a new trial, and remand to the circuit court with instructions to reinstate the jury's verdict.

## I. BACKGROUND.

This case arises from a traffic accident which occurred shortly before 7:00 a.m., on February 11, 1993, at the intersection of 80th Street and Morgan Avenue in the City of Milwaukee. The accident occurred after the bus which Williams was driving slid on ice, went through a stop sign, and struck the car driven by Jeffrey Totsky.

At trial, Totsky testified that, at the time of the accident, he was driving his car eastbound on Morgan Avenue. Williams testified that, at the same time, she was driving a Riteway school bus northbound on 80th Street. It was undisputed that Williams's lane of travel, the northbound lane of 80th Street at Morgan, was controlled by a stop sign and that Morgan Street eastbound (on which Totsky was traveling) was an arterial roadway which was not controlled at that intersection.

Williams testified that the day of the accident was a cold or cool February day, and that the roads seemed damp. She testified that she knew from her training and experience that sometimes even damp roads can be slippery, and that if the temperature was near freezing it was possible for ice to form, causing the roads to become even more slippery. Williams also testified that on the morning of the accident, before the accident happened, her bus had skidded twice on ice patches. Williams testified that the first time that she hit an ice

patch, the bus skidded a few feet to the side. Williams testified that the second time, the bus did not slide very far. Although Williams at some points seemed to testify that she did not see the ice patches, and that the road merely looked wet, at other points she testified that she did see each ice patch before skidding.

Williams testified that she was driving her normal bus route when the accident occurred, and that she knew there was a stop sign at the intersection of Morgan Avenue and 80th Street. Williams testified that, as she was approaching the intersection, she saw the stop sign. Although the speed limit was 25 miles per hour, Williams testified that, as she approached the stop sign, she drove between 10–15 miles per hour because of the risk that she might encounter some ice. When Williams was approximately 100 feet from the stop sign, she applied her brakes. After she applied her brakes, the bus began to skid. Although Williams turned the steering wheel into the skid, and pumped the brakes, she was unable to gain control of the bus. Williams testified that the road appeared wet, but not slippery, and that the ice on which the bus skidded appeared unexpectedly, creating an emergency situation. The bus then skidded through the stop sign and struck Totsky's vehicle. The defendant's expert, Robert Krenz, testified that the bus was traveling between 16 and 23 miles per hour before it began to skid, and that it struck Totsky's vehicle at between 11–16 miles per hour.

Following the accident, Totsky and his wife filed a personal injury lawsuit against Riteway. As noted, the case was tried to a jury, and at the close of evidence, the Totskys moved for a directed verdict in their favor. The circuit court took the motion under advisement, but allowed the case to go to the jury. The jury returned a

verdict finding that neither Williams nor Totsky was negligent in the operation of their vehicles. The Totskys then renewed their motion for directed verdict, and moved in the alternative for a new trial in the interest of justice and on the grounds that the verdict was against the weight of the evidence. The circuit court then granted both of the Totskys' motions, but the second was only granted conditionally. In so doing, the circuit court found that Williams was negligent as a matter of law in the operation of her vehicle, because she violated a safety statute which imposed an absolute duty on her to stop at the stop sign. The court also found that the emergency doctrine could not relieve Williams of the negligence resulting from her failure to stop at the stop sign, because the emergency doctrine is limited to negligence related to management and control. Further, the court held that the emergency doctrine was inapplicable because any emergency was created, in part, by Williams's excessive speed. The circuit court then entered a judgment in favor of the Totskys, and conditionally granted their motion for a new trial in the event that the judgment was reversed or vacated on appeal. Riteway now appeals.

## II. ANALYSIS.

Pursuant to § 805.14(4), STATS.,

> [i]n trials to the jury, at the close of all evidence, any party may challenge the sufficiency of the evidence as a matter of law by moving for directed verdict or dismissal or by moving the court to find as a matter of law upon any claim or defense or upon any element or ground thereof.

In addition, pursuant to § 805.14(5)(d), "[a] party who has made a motion for directed verdict or dismissal on which the court has not ruled pending return of the verdict may renew the motion after verdict. In the event the motion is granted, the court may enter judgment in accordance with the motion." A motion for directed verdict which challenges the sufficiency of the evidence "may not be granted 'unless the court is satisfied that, considering all credible evidence in the light most favorable to the party against whom the motion is made, there is no credible evidence to sustain a finding in favor of such a party.' " *Weiss v. United Fire & Cas. Co.*, 197 Wis. 2d 365, 388, 541 N.W.2d 753, 761 (1995) (quoting § 805.14(1), STATS.). This standard applies to both the circuit court and to an appellate court on review of the trial court's determination of the motion. *See id.*

> Because a circuit court is better positioned to decide the weight and relevancy of the testimony, an appellate court "must also give substantial deference to the trial court's better ability to assess the evidence." An appellate court should not overturn a circuit court's decision to dismiss for insufficient evidence unless the record reveals that the circuit court was "clearly wrong."
>
> . . . .
> . . . [T]he "clearly wrong" standard and the "no credible evidence" standard must be read together. When a circuit court overturns a verdict supported by "any credible evidence," then the circuit court is "clearly wrong" in doing so. When there is *any* credible evidence to support a jury's verdict, "even though it be contradicted and the contradictory evidence be stronger and more convincing, nevertheless the verdict . . . must stand."

*Id.* at 388–90, 541 N.W.2d at 761–62 (citations and footnote omitted).

Pursuant to § 805.15(1), STATS., "[a] party may move to set aside a verdict and for a new trial because of errors in the trial, or because the verdict is contrary to law or to the weight of evidence, or because of excessive or inadequate damages, or because of newly-discovered evidence, or in the interest of justice." Also, pursuant to § 805.15(4), "[i]f the court grants . . . a renewed motion for directed verdict, the court shall also rule on the motion for new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed, and shall specify the grounds for granting or denying the motion for new trial." On review of an order granting a new trial pursuant to § 805.15, an appellate court does not seek to sustain the verdict of the jury but looks for reasons to sustain the findings and order of the circuit court. *See Krolikowski v. Chicago & Northwestern Transp. Co.*, 89 Wis. 2d 573, 580, 278 N.W.2d 865, 868 (1979). The circuit court's decision whether to grant a new trial is discretionary, and will be reversed only where a clear erroneous exercise of discretion is shown. *See id.* at 580–81, 278 N.W.2d at 868. We will not find an erroneous exercise of discretion if the circuit court sets forth a reasonable basis for its determination that one or more material answers in the verdict require a new trial. *See id.* at 581, 278 N.W.2d at 868. We will, however, find an erroneous exercise of discretion if the circuit court grounds its decision upon a mistaken view of the evidence or an erroneous view of the law. *See id.*

The circuit court gave two reasons in support of its decision to grant the Totskys' renewed motion for directed verdict, and to conditionally grant the Totsky's

motion for a new trial: (1) by failing to stop at the stop sign, Williams violated a safety statute, and, because the emergency doctrine does not apply to violations of safety statutes, Williams was, therefore, negligent per se; (2) even if Williams's failure to stop at the stop sign did not amount to negligence per se, she was negligent as a matter of law in the manner in which she operated her motor vehicle, and the emergency doctrine was inapplicable because Williams's negligence created the alleged emergency. We conclude, after a thorough review of the record, that the circuit court erred by granting the directed verdict, and erroneously exercised its discretion in conditionally granting the motion for a new trial.

First, the circuit court erred in concluding that Williams's violation of § 346.46, STATS., necessarily constituted negligence per se. Although the circuit court was correct in finding that § 346.46 is a safety statute, and that the violation of a safety statute constitutes negligence per se, the circuit court erred in finding that the emergency doctrine can never relieve a party of a violation of a safety statute. To the contrary, the Wisconsin Supreme Court has applied the emergency doctrine in a situation very similar to the instant case, where an emergency caused a driver to lose management and control of a vehicle, resulting in the violation of a safety statute. *See La Vallie v. General Ins. Co. of Am.*, 17 Wis. 2d 522, 117 N.W.2d 703 (1962). Second, the circuit court erred in finding that there was no credible evidence to support an application of the emergency doctrine. Contrary to the circuit court's view, there was credible evidence that Williams did not negligently create the emergency which caused the accident. Thus, there was credible evidence supporting the application of the emergency doctrine, absolving

Williams of her violation of § 346.46. Therefore, the circuit court erred in granting the Totskys' motion for directed verdict, and erroneously exercised its discretion in conditionally granting the motion for a new trial, due to its erroneous view of the law.

The circuit court held that, if the emergency doctrine does not apply, Williams's failure to stop at the stop sign, in violation of § 346.46, STATS.,[1] a safety statute, constitutes negligence per se. In this respect, the circuit court was correct.[2] At issue, however, is

[1] Section 346.46(1), STATS., reads:

Except when directed to proceed by a traffic officer or traffic control signal, every operator of a vehicle approaching an official stop sign at an intersection shall cause such vehicle to stop before entering the intersection and shall yield the right-of-way to other vehicles which have entered or are approaching the intersection upon a highway which is not controlled by an official stop sign or traffic signal.

[2] " 'A safety statute is a legislative enactment designed to protect a specified class of persons from a particular type of harm.' " *Betchkal v. Willis*, 127 Wis. 2d 177, 184, 378 N.W.2d 684, 687 (1985) (citation omitted). Section 346.46, STATS., which requires all motor vehicle operators to stop at stop signs, is a safety statute like most other traffic statutes. *See* WIS J I—CIVIL 1325, 1325A (referring to § 346.46 as a safety statute); "[W]hile jury instructions are not precedential, they are of persuasive authority." *State v. Olson*, 175 Wis. 2d 628, 642 n.10, 498 N.W.2d 661, 667 n.10 (1993); *see also Betchkal*, 127 Wis. 2d at 183, 378 N.W.2d at 687 (court finding that § 346.34(1), STATS., governing use of turn signal, is a safety statute); *Northland Ins. Co. v. Avis Rent-A-Car*, 62 Wis. 2d 643, 649, 215 N.W.2d 439, 442 (1974) (court finding that § 346.14(1), STATS., governing distance between vehicles is a safety statute); *Milwaukee & Suburban Transp. Corp. v. Royal Transit Co.*, 29 Wis. 2d 620, 624, 139 N.W.2d 595, 597 (1966) (court finding that § 346.51, STATS., governing stopping, standing or parking outside of busi-

whether the emergency doctrine applies in this case. The emergency doctrine is a rule which precludes a finding of negligence when the person is confronted with an emergency. In order for the emergency doctrine to apply:

> (1) [t]he party seeking its benefits must be free from the negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3) the element of negligence inquired into must concern management and control.

*Tombal v. Farmers Ins. Exch.*, 62 Wis. 2d 64, 70, 214 N.W.2d 291, 295 (1974) (internal quotation marks and quoted sources omitted). The Totskys argue, and the trial court found, that because the emergency doctrine applies only to negligence related to management and control, it can never absolve a party of a violation of a safety statute. We disagree.

In *La Vallie*, the Wisconsin Supreme Court applied the emergency doctrine in a situation similar to this case. In *La Vallie*, as in this case, the plaintiff was injured in a winter automobile accident, caused by skidding on a slippery road. At the time of the accident,

---

ness or residence districts is a safety statute). If the harm inflicted by the violation of a safety statute is the type the statute was designed to prevent and the person injured was in the class sought to be protected, a violation of a safety statute constitutes negligence per se. *See Betchkal*, 127 Wis. 2d at 184, 378 N.W.2d at 687. In this case, the harm caused by an auto accident is the type of harm § 346.46 is designed to prevent, and Totsky, as a motorist, is a person in the class sought to be protected. Therefore, unless the emergency doctrine is applicable, Williams's violation of § 346.46 would constitute negligence per se.

which occurred in November 1959, the plaintiff was driving north on a highway which was icy and slippery due to the fact that it had snowed the night before. *Id.* at 524, 117 N.W.2d at 704. The plaintiff's car hit a bump created by accumulated ice and snow in the highway, and started to skid. *Id.* As the car was skidding, it went across the southbound lane and then all but the rear portion of the car came back into the northbound lane. *Id.* When three-quarters of the car was in the northbound lane, another car, being driven north on the highway by the defendant, crashed into the plaintiff's car. *Id.* The plaintiff filed a lawsuit, and after a jury trial, the jury found the defendant causally negligent with respect to lookout and speed, and absolved the plaintiff of any negligence. *Id.* at 525, 117 N.W.2d at 704. On appeal, the defendants-appellants urged the supreme court to "attribute some negligence to Mr. La Vallie [the plaintiff] for his violation of sec. 346.05(1), Stats., requiring one to drive on the right half of the roadway, and also for his violation of sec. 346.34(1), proscribing a change of direct course upon a roadway unless it can be done safely." *Id.* at 526–27, 117 N.W.2d at 705. The supreme court, however, affirmed the circuit court judgment, and stated:

> The jury expressly found that Mr. La Vallie was not negligent as to his position on the roadway. The jury was properly instructed on the emergency doctrine. Their answer on this part of the verdict must be sustained, and this disposes of the alleged violation of sec. 346.05(1), Stats. Also, the emergency doctrine would excuse any alleged violation of sec. 346.34(1), since the change of direct course occurred at a time when the La Vallie car was out of control through no fault of the driver.

*Id.* at 527, 117 N.W.2d at 705.

██

Thus, although the emergency doctrine would presumably not apply if a violation of a safety statute was caused by negligent lookout, or other negligence unrelated to management and control, *La Vallie* clearly holds that the emergency doctrine can apply if a violation of the safety statute is caused by a loss of management and control through no fault of the driver, presuming the other requirements for invoking the emergency doctrine are met. Therefore, the circuit court erred in concluding that the emergency doctrine, as a matter of law, could not relieve Williams of her violation of § 346.46.[3]

---

[3] The Totskys argue, and the trial court held, that *Leckwee v. Gibson*, 90 Wis. 2d 275, 280 N.W.2d 186 (1979), bars the application of the emergency doctrine to situations involving violations of safety statutes. *Leckwee*, however, is inapposite, because in that case, as the Totskys concede, the court did not consider the application of the emergency doctrine because the plaintiff failed to request a jury instruction on the emergency doctrine. *Id.* at 289, 280 N.W.2d at 192. In any event, the emergency doctrine was inapplicable in that case because the plaintiff-appellant was negligent not only with respect to management and control, but also with respect to lookout. *Id.*

The RESTATEMENT (SECOND) OF TORTS also supports application of the emergency doctrine to absolve a party of a violation of a safety statute. According to RESTATEMENT (SECOND) OF TORTS § 288A (1965), an "excused" violation of a safety statute does not constitute negligence per se. RESTATEMENT (SECOND) OF TORTS § 288A (1965), reads:

§ 288A. Excused Violations

(1) An excused violation of a legislative enactment or an administrative regulation is not negligence.

(2) Unless the enactment or regulation is construed not to permit such excuse, its violation is excused when

Additionally, the circuit court erred in concluding that there was no credible evidence supporting an application of the emergency doctrine in this case. The circuit court specifically erred in finding that, as a matter of law, Williams's negligence contributed to the creation of the emergency. The circuit court explained its decision as follows:

> Moreover, with respect to the application of the emergency doctrine, if it applies at all, as a matter of law based on the testimony of Miss Williams, the driver, that she had skidded on ice twice before that very same morning when approaching intersections or stop signs, as a matter of law coming up to that stop sign at a speed which was too fast for icy conditions—and I am not concerned, frankly, whether that speed is 10 miles an hour or 16 miles an hour or 20 miles an hour or 11.2 miles an hour. It doesn't make any difference. She was going too fast, whatever speed she was traveling at, to maintain

(a) the violation is reasonable because of the actor's incapacity;

(b) he neither knows nor should know of the occasion for compliance;

(c) he is unable after reasonable diligence or care to comply;

(d) he is confronted by an emergency not due to his own misconduct;

(e) compliance would involve a greater risk of harm to the actor or to others.

As noted, § 288A(d) specifically states that a violation of a safety statute is "excused" and does not constitute negligence per se when the actor is "confronted by an emergency not due to his [or her] misconduct." RESTATEMENT (SECOND) OF TORTS § 288A(d) (1965). Therefore, if the jury had applied the principles recognized in § 288A, the jury could have found that Williams "was confronted by an emergency not due to [her] own misconduct," and that because of that fact, her violation of § 346.46, STATS., was "excused" and did not constitute negligence per se.

her vehicle under proper management and control. And when she hit ice with little or no time to react because she was going too fast and in view of the fact that she knew there was a danger that morning that ice existed on the roadways, she created the emergency in part by her own conduct.

We disagree.

■

The speed limit on 80th Street was 25 miles per hour. Williams testified that before she hit the icy patch, she was driving between 10 and 15 miles per hour. Riteway's expert testified that before she hit the icy patch she was driving between 16 and 23 miles per hour. Neither Williams's testimony nor Riteway's expert's testimony was incredible as a matter of law. Therefore, the jury could have found that, at the time the bus hit the icy patch and began to skid, Williams was driving as slowly as either 10 miles per hour, if it accepted Williams's testimony, or 16 miles per hour, if it accepted Riteway's expert's testimony. Contrary to the circuit court, we do not believe that, given the facts of this case, Williams was negligent as a matter of law for driving as slowly as 10 or 16 miles per hour. Even though the roads were slippery and Williams had previously skidded twice on the ice, a reasonable jury could have concluded that 10 or 16 miles per hour was a reasonably safe, non-negligent speed. Although a reasonable jury could have come to the opposite conclusion, the jury in this case did not do so.

■

Additionally, although the circuit court did not explicitly consider the remaining two prongs of the emergency doctrine, there was credible evidence supporting a jury finding that they were met in this case. There was credible evidence that the time element in

which Williams was required to act was short enough to preclude action sufficient to avoid the accident. Although Williams testified that she had skidded twice on the ice before, and knew the roads were slippery, she also testified that she had seen the icy patches which had previously caused her to skid, but that she was not able to see the icy patch which caused the accident. This testimony was not incredible as a matter of law. Thus, there was credible evidence to support a jury finding that the emergency in this case was not the existence of icy patches on the road in general, or the fact that the roads were generally slippery, but rather, that Williams's bus hit an icy patch which she was unable to see. Therefore, the relevant time period was not the time between hitting the previous ice patches and the accident, but rather, the time between hitting the last unseen icy patch and the collision. This time period was only a few seconds long, and therefore, there was credible evidence that the second prong of the test was met. Finally, because there was credible evidence to support a jury finding that Williams's alleged negligence was limited to her management and control of the bus, the jury also reasonably could have found that the third prong was met.

 Therefore, because the emergency doctrine applies to situations where a driver violates a safety statute because of an emergency causing a loss of management and control, and because there was credible evidence supporting the application of the emergency doctrine to the facts of this case, the circuit court erred by granting a directed verdict in favor of the Totskys. Additionally, because the circuit court's conditional order granting a new trial was grounded in its erroneous view that the emergency doctrine can never absolve a driver of a

violation of a safety statute, the circuit court erroneously exercised its discretion in conditionally granting the Totskys' motion for a new trial. Consequently, we reverse the circuit court's judgment and order and remand with directions to reinstate the jury's original verdict.

*By the Court.*—Judgment and order reversed and cause remanded with directions.